In re **LETTERS OF REQUEST TO EXAMINE WITNESSES FROM the COURT OF QUEEN'S BENCH FOR MANITOBA, CANADA.**

**No. M–73 0028C.**

United States District Court,
N. D. California.
May 23, 1973.

---

6. Plaintiffs are directed to Katz v. Carte Blanche Corp., 53 F.R.D. 539 (W.D.Pa.1971), for the form of the notice.

Stuart R. Pollak and Robert J. Gelhaus of Howard, Prim, Rice, Nemerovski, Canady & Pollak, San Francisco, Cal., for Manitoba Commission of Inquiry.

Edwin E. Huddleson, Jr., Jerald L. Wilkerson and Augustus Castro of Cooley, Godward, Castro, Huddleson & Tatum., San Francisco, Cal., for James Tatum, San Francisco, Cal., for James L. Zeigler.

## ORDER GRANTING MOTION TO VACATE PRIOR ORDER AND TO QUASH SUBPOENA

WOLLENBERG, District Judge.

On February 6, 1973, this Court issued an *ex parte* Order presented by James L. Browning, Jr., United States Attorney for the Northern District of California, appointing C. Rhodes Smith, Q. C.; Leon Mitchell, Q. C.; and Murray Donnelly, Ph.D., of Manitoba, Canada, as commissioners to take such steps as may be necessary to obtain the testimony and other relevant evidence from Cyril C. Hermann and James L. Zeigler.

The Order was based upon a Letter of Request addressed to this Court by the Chief Justice of the Court of Queen's Bench for Manitoba, Canada, and 28 U. S.C. § 1782. The Letter of Request sets forth that Mssrs. Smith, Mitchell, and Donnelly are Commissioners appointed for a Public Inquiry under the authority of Part V of The Manitoba Evidence Act, R.S.M., c.E 150, and Order-in-Council No. 9471. The subject of their inquiry is all aspects of The Pas Forestry and Industrial Complex, a multi-million dollar forestry and industrial project in Manitoba.

On March 9, 1973, the Commission caused to be served upon Zeigler in Tiburon, California, a subpoena to appear and give testimony under oath. The witness Zeigler moves this Court to vacate its Order of February 6, 1973, and to quash the subpoena served pursuant thereto.

■ In support of his motion, Zeigler contends that 28 U.S.C. § 1782 does not empower this Court to compel testimony on behalf of a Canadian Commission of Inquiry. Even if the Court has the power to compel testimony, Zeigler urges that the Court exercise the discretion vested in it by § 1782 to deny the request of the Manitoba Commission. Counsel for the Commission argues that under the 1964 amendment to § 1782 the Court has the power to compel the testimony sought by the Commission, and that no just reason exists to deny the request. After a full consideration of the arguments raised by counsel in their briefs and at the hearing on this matter, it is the Court's judgment that § 1782 was not intended to and does not authorize United States courts to compel testimony on behalf of foreign governmental bodies whose purpose is to conduct investigations unrelated to judicial or quasi-judicial controversies.

On October 3, 1964, President Johnson signed into law a Bill to improve judicial procedures for serving documents,

obtaining evidence, and proving documents with international aspects. Public Law 88–619, 78 Stat. 995 (1964). Section 9 of that bill amended 28 U.S.C. § 1782 to provide as follows:

"§ 1782. Assistance to foreign and international tribunals and to litigants before such tribunals.

"(a) The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing produced, before a person appointed by the court . . . . "

Prior to amendment, the relevant portion of § 1782 provided:

"§ 1782. Testimony for use in foreign country.

"The depositions of any witness within the United States to be used in any judicial proceeding pending in any court in a foreign country with which the United States is at peace may be taken . . . ." 63 Stat. 103 (1949)

Earlier versions restricted the power to compel testimony to "any civil action pending in any court in a foreign country", 62 Stat. 949 (1948) and for use in a "suit for the recovery of money or property depending in any court in any foreign country". 12 Stat. 769 (1863).

The Commissioners make two arguments in support of the Court's prior order. First, they contend that the 1964 amendment was intended to liberalize and broaden the scope of the authority vested in United States courts to compel testimony on behalf of foreign institutions whose purposes are to investigate, report, and recommend. The use of the word "tribunal" in lieu of "judicial pro-

ceeding pending in any court" is at the heart of this contention. Alternatively, the Commissioners argue that the Manitoba Commission of Inquiry is a tribunal, and that its activities constitute judicial or quasi-judicial proceedings within the meaning of the amended statute. The Court must reject both these contentions.

■ There can be no doubt that the purpose of enacting Public Law 88–619 was to broaden and liberalize the procedures by which United States courts cooperate with foreign and international tribunals. In his transmittal letter to President Kennedy, the Chairman of Commission on International Rules of Judicial Procedure, which drafted and recommended the proposed amendments, stated that:

"Until recently, the United States has not engaged itself fully in efforts to improve practices of international cooperation in litigation. The steadily growing involvement of the United States in international intercourse and the resulting increase in litigation with international aspects have demonstrated the necessity for statutory improvements and other devices to facilitate the conduct of such litigation. Enactment of the proposed bill into law will constitute a major step in bringing the United States to the forefront of nations adjusting their procedures to those of sister nations and thereby providing equitable and efficacious procedures for the benefit of tribunals and litigants involved in litgation with international aspects." [1]

This statement of purpose was adopted by the Judiciary Committees of both houses of Congress.[2]

■ The legislative history does not indicate, however, that it was the purpose of Congress or the Administration to broaden the scope of international cooperation beyond the activities of courts and other quasi-judicial entities to encompass bodies whose primary functions are investigative. Indeed, the passage just quoted makes repeated reference to litigation and litigants. To the same effect is a letter from President Kennedy to Chairman Cox, dated May 27, 1963, in which the President stated:

"This proposal has been reviewed within the administration, and we have reached the conclusion that the procedural reforms which its enactment would accomplish would be most desirable from the standpoint of the administration of international justice on behalf of private litigants." [3]

■■ The Commissioners' argument that the references to litigation were not intended to limit the scope of the amendment is not well taken. Use of the term "tribunal" in the amended statute was explained in the report of the advisory commission, and adopted by both houses of Congress as follows:

"A rather large number of requests for assistance emanate from investigating magistrates. The word 'tribunal' is used to make it clear that assistance is not confined to proceedings before conventional courts. For example, it is intended that the court have discretion to grant assistance when proceedings are pending before investigating magistrates in foreign countries. See Lelievre in Letters Rogatory 13 (Grossman ed. 1956). In view of the constant growth of administrative and quasi-judicial proceed-

1. Letter of Oscar Cox, January 28, 1963, reproduced in the Fourth Annual Report of the Commission on International Rules of Judicial Procedure, H.R.Doc.No.88, 88th Cong., 1st Sess. 19 (1963).

2. Judicial Procedures in Litigation with International Aspects, Report of the Com-

mittee on the Judiciary, H.R.Rep.No.1052, 88th Cong., 1st Sess. 4 (1963) ; S.Rep. No.1580, 88th Cong., 2d Sess. 2 (1964) ; Cf., 1964 U.S.Code Cong. & Admin.News pp. 3782, 3783.

3. Reproduced in H.R.Rep.No.1052, 88th Cong., 1st Sess. at 3. (1963).

ings all over the world, the necessity for obtaining evidence in the United States may be as impelling in proceedings before a foreign administrative tribunal or quasi-judicial agency as in proceedings before a conventional foreign court. Subsection (a) therefore provides the possibility of United States judicial assistance in connection with all such proceedings." [4]

From this language it appears that Congress intended to ignore any distinctions between purely judicial bodies, and quasi-judicial administrative bodies; between conventional courts and adjudicative institutions or individuals, such as the French investigating magistrate, to which there is no equivalent American institution.[5] All were intended to be included in the term "tribunal". But nothing in the foregoing indicates a Congressional intent to include institutions whose purpose is to investigate and report to the executive or legislative branches of government. Rather, the crucial requirement is that the foreign body exercise adjudicative power,[6] and have an adjudicative purpose.[7]

The Commissioners' alternative argument in support of the Order of February 6, 1973, is that the Manitoba Commission of Inquiry is a "tribunal" within the meaning of § 1782 despite the fact that the Order in Council creating the Commission authorizes it only "to enquire into, ascertain and report upon the facts and circumstances relating to the development of the forestry and industrial complex near The Pas . . . [and] to make recommendations . . . . " Order in Council No. 94/71. Authority for this argument derives from The Manitoba Evidence Act, R.S.M. c.E 150. Section 2 of that Act contains the following definitions:

"(a) 'action' includes any civil proceeding, inquiry, arbitration, and a prosecution for an offense . . . and any other prosecution or proceeding authorized or permitted to be tried, heard, had or taken, by or before a court under the law of the province;

. . . .

"(d) 'court' means the court, judge, arbitrator, commissioner, or per-

4. House Doc.No.88, 88th Cong. 1st Sess. 45 (1963); H.R.Rep.No.1052, 88th Cong., 1st Sess. 9 (1963); S.Rep.No.1580, 88th Cong., 2d Sess. 7–8 (1964).

5. The Commissioners' contention that the Commission of Inquiry is such a body is discussed in connection with the argument that the Commission is a tribunal.

6. This interpretation of "tribunal" is based upon the opinion of Professor Hans Smit, Reporter to the Commission and Advisory Committee on International Rules of Judicial Procedure, as reflected in Smit, "International Litigation Under the United States Code," 65 Colum.L.Rev. 1015 at 1021 n. 36, 1023 n. 53, and 1026 n. 71 (1964). It is in accord with standard definitions, such as Black's Law Dictionary (4th Ed. 1951): " . . . a judicial court; the jurisdiction which the judges exercise." and Webster's New International Dictionary (2d ed. 1950): "a tribune who administered justice; . . . 2. Hence, a court or forum of justice; a person or body of persons having authority to hear and decide disputes so as to bind the disputants . . . . " Smit indicates that the term "was chosen de-

liberatedly as being both neutral and encompassing. Any person or body exercising adjudicatory power is included." 65 Colum.L.Rev. at 1021 n. 36.

7. The Commissioners point to language in the House and Senate reports to the effect that: "If the court fails to prescribe the procedure, the appropriate provisions of the Federal Rules of Civil Procedure are to be followed, irrespective of whether the foreign or international proceeding or investigation is of a criminal, civil, administrative, or other nature." S.Rep.No. 1580, 88th Cong., 2d Sess. 9 (1964), U.S.Code Cong. & Admin.News 1964, p. 3789; H.R.Rep.No.1052, 88th Cong., 1st Sess. 10 (1963). This language is directed towards the procedures to be followed once a valid request has been honored. Use of the terms "investigation" and "or other nature" recognize that an adjudicative tribunal may be a body which conducts investigations. But it does not appear to indicate that a body whose sole function is to conduct investigations on behalf of a legislative or executive agency is a tribunal within the meaning of the statute.

son, before whom a legal proceeding is held or taken;

. . . .

"(f) 'legal proceeding' means any civil proceeding, inquiry, or arbitration, in which evidence is or may be given . . . ."

From these definitions, the Commissioners argue that their inquiry is a legal proceeding within the meaning of (f), and that the Commission constitutes a court within the meaning of (d). As such, the Commission is entitled to be treated as a tribunal under § 1782.

Assuming that the Commissioners statement of Manitoba law is correct, it does not follow that this Manitoba court is a "tribunal" within the meaning of § 1782. As discussed above, the history of § 1782 indicates that the purpose of the statute is to provide assistance to foreign and international adjudicative bodies, no matter what they may be called by the law which creates them, or how they differ from familiar American institutions. Hence, the Court must look beyond these definitions to ascertain whether the Commission is an adjudicative body.[9]

The Commissioners direct the Court's attention to Part V of the Act which authorizes the appointment of commissions of inquiry by the Lieutenant Governor in Council (§ 85(1)) and sets forth the powers of such commissions (§§ 90(1)–(96)). These powers are extremely broad. Commissioners may, without seeking the aid of a court, summon witnesses to appear before them by subpoena and, in appropriate cases, by warrant. The commissioners may punish witnesses for refusal to take an oath or refusal to testify by committing such witnesses to jail for a term not to exceed one month. The commissioners themselves are protected by the same judicial immunity as judges of the Court of Queen's Bench (§ 89), and may not be restrained or interfered with except in accordance with the Act (§ 97(4)).

The Commissioners contend that the ability to exercise such powers, which typically are granted to judicial bodies, is determinative of the status of the Commission as a tribunal. The Court cannot agree. Conspicuous by its absence from the powers enumerated above is the power to make a binding adjudication of facts or law as related to the rights of litigants in concrete cases. It is this power, common to conventional courts and quasi-judicial bodies alike, which determines whether an institution is a tribunal within the meaning of § 1782.[10] Because it does not appear from

---

9. Moreover, reliance upon these definitions to find that the Commission is a tribunal proves too much, for if the definitions be accepted, then the Commission would have qualified as a court under the 1948 version of § 1782. Yet the Commission has not cited the Court to a single instance where any Canadian or other foreign commission of inquiry has been aided by a United States court.

10. The only federal case construing § 1782 since the 1964 amendment is consistent with this holding. In In re Letters Rogatory Issued by the Director of Inspection of the Government of India, 272 F.Supp. 758 (S.D.N.Y.), rev'd, 385 F.2d 1017 (2d Cir. 1967), the District Court, after reviewing the legislative history of the 1964 amendment, came to the conclusion that an Indian tax inspector, who had powers of comparable magnitude to those exercised by the Commission of Inquiry, as well as the power to assess tax liabilities, was a tribunal as contemplated by § 1782. The Court of Appeals reversed on the grounds that there was no separation between the prosecutorial and adjudicative functions exercised by the inspector, and that:

"Congressmen, who have doubtless had their income tax returns audited and sometimes questioned like the rest of us, would hardly have considered that the procedures of the Internal Revenue Service leading. to a determination of deficiency or an assessment were proceedings in a 'tribunal.'" 385 F.2d at 1021.

In *dictum*, the Court suggested that the concept of a "tribunal" "is not so broad as to include all the plethora of administrators whose decisions affect private par-

the Manitoba Evidence Act or any of the materials furnished by the Commissioners that they are authorized to exercise the power to adjudicate rights, the Commission of Inquiry does not qualify as a tribunal. Consequently, the subpoena issued to Zeigler must be quashed, and the Court's Order must be vacated.[11] It is so ordered.

ties and who are not entitled to act arbitrarily . . . ." *Id.* The problem of whether the Commission would qualify under the implied limitation of this language does not arise since we hold that it is not a tribunal. *Cf.*, Kenoff, "Note—Discovery," 10 Harv.Int.L.J. 172 (1969).

11. The Court's ruling on the meaning of "tribunal" in § 1782 obviates the necessity of a detailed consideration of Zeigler's alternative basis for quashing the subpoena—that the Court should exercise its discretion on the facts of this particular case to find that granting aid to a foreign tribunal would be inappropriate. Suffice it to say that if this Court had the power under § 1782 to grant such aid, the Court would, in the exercise of its discretion, permit the Order and subpoena to stand on condition that Zeigler be given reasonable compensation for the period during which necessary preparation for the deposition was made, and during the deposition itself.