**In re REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE (LETTER ROGATORY) FROM THE FEDERATIVE REPUBLIC OF BRAZIL.**

**Misc. No. M–13–72.**

United States District Court,
S.D. New York.

June 8, 1988.

Engel & Mulholland, New York City, for petitioners Midland Trading Corp., Four Dimensions and Pendennis Corp.; Thomas E. Engel, of counsel.

Fox & Horan, New York City, for petitioners General Universal Trading Corp. and Dartois Investments, Inc.; Donald T. Fox, of counsel.

Rudolph W. Giuliani, U.S. Atty., for S.D. N.Y., New York City, for U.S.; Nelson W. Cunningham, of counsel.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

Petitioners, five Panamanian corporations, have moved before the undersigned in Part I of this Court to quash a subpoena *duces tecum* seeking testimony from and the production of documents by Morgan Guaranty Trust Company ("Morgan") pursuant to letters rogatory issued by a Brazilian court at the request of a Brazilian prosecutor. The case turns upon the proper construction of the governing statute, 28 U.S.C. § 1782, and the regulations promulgated thereunder, particularly 22 C.F.R. § 92.67.

## BACKGROUND

This case has its genesis in a criminal prosecution in this District against one Antonio Gebauer, a former Morgan officer

convicted of defalcations involving bank accounts maintained at Morgan purportedly on behalf of Latin American clients. That prosecution, much publicized, generated concern on the part of Brazilian government authorities in respect of possible flight of capital from Brazil to the United States, in violation of Brazilian tax and currency control laws.

Against that background, the letters rogatory in dispute were issued. They were issued by the Hon. Anna Maria Pimentel, a Judge of the Federal Court of the Fifth Division of the Federative Republic of Brazil. The original document is in Portuguese. The translation furnished by an official public translator in Brazil translates the opening paragraph of the letters rogatory as follows:

"HONORABLE ANNA MARIA PIMENTEL, Judge of the 5th Division makes it known that in this Court and Secretariat proceedings of the Police Investigation no. 148–PCD/86 are under way, commenced in view of the request contained in the Office of the Attorney General of the Republic Letter no. 524/86, The Presidency of the Republic, The Federal District, of July 03, 1986, aiming at assessing and determining possible offenses of tax evasion related to an alleged defalcation on bank accounts maintained by Brazilian citizens with the MORGAN GUARANTEE [sic] TRUST COMPANY OF NEW YORK aggregating to about US $6,000,000.00 . . ."

Counsel for the petitioners have obtained a partial copy of the original letters rogatory. A commercial translator gives a somewhat different rendition of the words appearing immediately after Judge Pimentel's name. In petitioners' translation, the preamble to the letters rogatory recites:

" * * * Federal Judge of the fifth jurisdiction, states that this court and clerk's office have extracted from the record of police inquiry no. 148–PCD/86 . . ."

In any event, the letters rogatory came into the hands of the United States Attorney for this District for implementation. Following a revision of the original letters by the Brazilian authorities, the United States Attorney obtained from Judge Carter an order entered on January 20, 1988 appointing Assistant United States Attorney Linda Imes (the prosecutor in the Gebauer case) as a commissioner, together with Brazilian executive authorities, and directing the commissioners to take testimony and require witnesses to produce documents pursuant to Rule 17(c), F.R.Crim.P.

Pursuant to Judge Carter's order, on January 28, 1988 Commissioner Imes caused a grand jury subpoena to issue to Morgan requesting certain documents. The documents to be produced were described in a rider to the subpoena which reads as follows:

"For the period January 1, 1976 up to and including August 30, 1985:

1. Any and all documents reflecting defalcation(s) by Antonio Gebauer from account(s) controlled by the following individuals: Francisco Catao, Cecilio Do Rega Almeida, Fernando Muniz DeSouza, and Leonidas Borio;

2. Account statements for the accounts described in paragraph one;

3. Any and all documents reflecting deposits made to the accounts identified in paragraph one, including but not limited to document reflecting the origin and source of the deposits."

It appears from the motion papers that in response to this subpoena, Morgan proposes to hand over to the commissioner the account documents of six Panamanian corporations. One or another of the four Brazilian nationals named in the rider to the subpoena appear, according to the government's brief, as "signatories" on these corporate accounts. Specifically, Borio is a signatory on corporate accounts in the names of Midland Trading Corporation and Four Dimensions; DeSouza is a signatory on the account of the Pendennis Corporation; Catao is a signatory on the corporate accounts of General Universal Trading Corporation and Dartois Investments, Inc.; and Almeida is a signatory on the corporate account of Transnational Corporation. Almeida does not contest the letters rogatory or the subpoena. In consequence, the three petitioners are Borio, DeSouza, and

Catao, who move to quash the subpoena as to them and the indicated, allegedly "controlled" corporations.

It appears from the government's sealed affidavit and exhibits that the original letters rogatory issued on September 24, 1986. The letters were amended on October 13, 1987, and it is in response to the sealed, amended letters rogatory that Judge Carter issued his order of January 20, 1988. In the "closing" to the original letters rogatory, Judge Pimentel addressed the American Judge of competent jurisdiction by saying (according to the official translation) that she "requests Your Honor to cause this Court" to respond to the letters rogatory, adding that "by executing your respectable 'THIS REQUEST SHALL BE FULFILLED' upon these letters rogatory, Your Honor will be rendering special service to the Judiciary Power of the Federative Republic of Brazil." The closing to the amended letters rogatory contains the same language.

## DISCUSSION

### A. *Applicability of § 1782.*

The commissioner seeks implementation of the letters rogatory under the pertinent statute, 28 U.S.C. § 1782. § 1782(a) provides in pertinent part:

"The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. By virtue of his appointment, the person appointed has power to administer any necessary oath and take the testimony or statement. The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure."

The applicability of the Federal Rules of Civil Procedure is echoed by the regulations governing proceedings under § 1782. *See* 22 C.F.R. § 92.67(a); *see also* Civil Rule 16 of this Court.

The threshold issue is whether the subpoenaed documents are "for use in a proceeding in a foreign or international tribunal." That must be made to appear to render letters rogatory enforceable. While Congress expanded the scope of § 1782 in 1964, "it did not go to the full extent of authorizing a district court to execute letters rogatory whenever requested by a foreign country or a party there; the testimony must be 'for use in a proceeding in a foreign or international tribunal.'" *In Re Letters Rogatory Issued by the Director of Inspection of the Government of India,* 385 F.2d 1017, 1020 (2d Cir.1967), per Friendly, Ct. J. (hereinafter *"India"*).

Whether or not particular requested testimony or evidence was intended "for use in a proceeding in a foreign or international tribunal" has given rise to a considerable body of case law. The Second Circuit authorities are *India,* as further explicated in *Fonseca v. Blumenthal,* 620 F.2d 322 (2d Cir.1980). My analysis begins with those cases.

*India* and *Fonseca* both hold that presentation to a United States District Court of letters rogatory by an officer of a foreign government's executive branch does not fall within § 1782. In *India* the government official was a Director of Inspection under the income tax act of the government of India; his counterpart in *Fonseca* was the Superintendent of Exchange Control of the Republic of Colombia. The Indian government was investigating whether taxes should be assessed against a particular individual; the Colombian government was investigating whether an individual had violated that country's laws governing currency exchange control. Neither inquiry, in the view of the Court of

Appeals, could be characterized as "a proceeding in a foreign or international tribunal."

Judge Friendly's discussion in *India* carries the analysis somewhat beyond the particular point of decision. Reflecting upon the 1964 amendment to § 1782, Judge Friendly quoted the legislative history to demonstrate that the word "tribunal" was added "to make it clear that assistance is not confined to proceedings before conventional courts. For example, it is intended that the Court have discretion to grant assistance where proceedings are pending before investigation magistrates in foreign countries." 385 F.2d at 1019, quoting H.R. Rep. 1052, 88th Cong. 1st Sess. p. 9 (1963). Judge Friendly illustrates the thrust of the 1964 amendment by considering the status of the *juge d'instruction* in the French legal system. As usual, it is profitable to quote Judge Friendly's analysis at some length:

"The *juge d'instruction* occupies a place in the French legal system somewhat parallel to that of the grand jury in the Anglo–American system, in that it is he who decides whether the evidence against a person accused of a major crime is sufficient to require him to stand trial. The *juge d'instruction* usually enters the case at the request of the *procureur*, the counterpart of the district attorney, but he may also be seized of the case by the complaint of the *partie civile*, the injured party, although in the latter case intervention of the *procureur* must be obtained. Once seized of the case, the *juge* assumes a more active role than a grand jury would. He is in charge of the investigation though he delegates the detective work to the police. It is he rather than the *procureur* who questions the witnesses, and except when the accused is being interrogated, none of the parties may even be present at the examination. But the extent of the participation of the *juge* in the investigation—greater than that of the *procureur* or the *partie civile*, and of course greater than the grand jury's— does not mean that he has an institutional interest in a particular result. 'The

*juge d'instruction* represents neither the interest of the police nor that of the state prosecutors * * *.' Anton, L'Instruction Crimminelle, 9 Am.J.Comp.L. 441, 443 (1960). On the contrary, the prosecution is represented before the *juge d'instruction* by the *procureur* to the same, though by American standards small, extent that the accused is by his counsel. The *juge* does not have the interest in obtaining the conviction of the accused that he would have if his office were an arm of the prosecution albeit one which was adjured to act impartially. Rather, 'his aim is simply to ensure that justice is done.' Anton, loc. cit. supra." *Id.* at 1020.

Judge Friendly adds:

"We do not hold that the expansion effected by the 1964 amendment is limited to investigating magistrates similar to the *juge d'instruction* and still less that a foreign agency must satisfy all the requirements for adjudicative proceedings under the Administrative Procedure Act, 5 U.S.C. § 554, to qualify as a 'tribunal' under 28 U.S.C. § 1782. On the other hand, that concept is not so broad as to include all the plethora of administrators whose decisions affect private parties and who are not entitled to act arbitrarily, and one useful guideline is *the absence of any degree of separation between the prosecutorial and adjudicative functions.*" *Id.* at 1020–21 (emphasis added).

In *Fonseca*, a *per curiam* opinion, the Second Circuit applied the *India* analysis to the Colombian exchange control official:

"Unlike the *juges d'instruction*, the Superintendent of Exchange Control is charged to act in the government's interest to enforce the law. He is required to protect the balance of payments by restraining the outward flow of capital from Colombia. He has extraordinary powers to order and conduct far-reaching investigations. Upon completion of his investigation, he is empowered to determine whether violation of the law has occurred. Although the subject of an investigation may be represented by

counsel, the government's sole representative is the Superintendent himself.

The essence of the Superintendent's responsibility is the direction of the law enforcement agency. Unlike the *juge*, he has what Judge Friendly referred to in *India* as 'an institutional interest in a particular result.' *In re Letters Rogatory (India), supra*, 385 F.2d at 1020. This interest is inconsistent with the concept of impartial adjudication intended by the term 'tribunal'." 620 F.2d at 324.

■ The government argues at bar that *India* and *Fonseca* are inapposite because the present letters rogatory were signed by a Brazilian judge. In my view, however, the fact that these letters rogatory take the form of a request by a judge is not dispositive. The decisive issue under § 1782 is whether the subpoenaed documents are sought "for use in a proceeding in a foreign or international tribunal." A foreign judge's signature, in and of itself, does not resolve that issue. Thus in *In re Letters of Request to Examine Witnesses from the Court of Queen's Bench for Manitoba, Canada*, 488 F.2d 511 (9th Cir. 1973), the letters rogatory seeking subpoenaed testimony in the District Court were signed by the Chief Justice of the Court of Queen's Bench for Manitoba, Canada. Nevertheless, the District Court quashed the subpoenas and the Court of Appeals affirmed, since it appeared that the request originated with a Canadian Commission of Inquiry authorized by an Order in Council "to enquire into, ascertain and report upon the facts and circumstances relating to the development" of a forestry and industrial complex in Canada. Opinion of the District Court, reported at 59 F.R.D. 625 (N.D.Cal. 1973) at 629. The 9th Circuit adopted the conclusion of District Court at 488 F.2d 512:

"After a full consideration of the arguments raised by counsel in their briefs and at the hearing on the matter, it is the Court's judgment that § 1782 was not intended to and does not authorize the United States courts to compel testimony on behalf of foreign governmental bodies whose purpose is to conduct investigations unrelated to judicial or quasi-judicial controversies."

The question, in short, is one of substance, and not form. Accepting that I do that a Brazilian judge has asked this Court for its assistance, the question posed by the *India* analysis remains: Is there, in the underlying procedures, a meaningful degree of separation "between the prosecutorial and adjudicative functions?"

■ The United States Attorney argues forcibly that I should not, indeed cannot, look beyond Judge Pimentel's recitation (at least as rendered in the official translation) that "in this Court ... proceedings ... are underway ...". With the greatest respect to my Brazilian colleague, I remain of the view that the petitioners raise a legitimate question concerning the nature of those "proceedings". The letters rogatory and their supporting documents are sealed; and I deny petitioners' request that they be unsealed, since petitioners and their counsel know enough about the surrounding circumstances to make intelligent arguments. But it is fair to say that Brazilian police and tax authorities are conducting an investigation to see whether crimes have been committed and whether taxes should be assessed. If these executive authorities had presented the letters rogatory themselves, the presentation would clearly fail under *India* and *Fonseca*. The question, equally clearly posed by Judge Friendly's analysis in *India*, is whether the Brazilian court automatically forwards such prosecutorial letters rogatory, or whether there is a "proceeding" presently before the Brazilian court which requires that court to exercise an independent adjudicative function.

That distinction is suggested by a case the government cites, *In re Letters Rogatory from the Tokyo District, Tokyo, Japan*, 539 F.2d 1216 (9th Cir.1976). A Japanese judge presented letters rogatory *ex parte* to the United States District Court for the Central District of California. The letters "were issued in aid of the ongoing investigation of alleged violations of Japanese income tax laws by one named, indicted individual and other unnamed, unindicted individuals." 539 F.2d at 1218. The

Court of Appeals, enforcing the subpoenas, observed that a purpose of the 1964 amendment "was to allow federal district courts to consider Letters Rogatory issued by foreign investigating magistrates." *Id.* at 1219. The Ninth Circuit distinguished its earlier *Manitoba* decision, to which I referred *supra*, by saying this:

> "The *Manitoba* decisions [59 F.R.D. 625 and 488 F.2d 511, *supra*] are clearly distinguishable as the Letters Rogatory there in issue were presented by an entity whose sole power was to make recommendations to a non-judicial body. The material before this court suggested that the Tokyo public prosecutor is empowered to make a final decision as to whether or not to prosecute an individual *and the Tokyo District Court is empowered to determine whether or not an investigation is entitled to judicial assistance." Ibid.* (emphasis added).

I infer from the italicized language that the record before the Ninth Circuit affirmatively demonstrated the Japanese court's adjudicative function in determining whether or not letters rogatory should be presented in support of a prosecutorial investigation. In the case at bar, a comparable adjudicative function on the part of the Brazilian court is not demonstrated with comparable clarity to me.

The United States Attorney relies upon general statements in decisions from other circuits that our federal courts should not inquire too closely into foreign law in deciding whether or not to enforce letters rogatory. *John Deere. Ltd. v. Sperry Corporation,* 754 F.2d 132, 136 (3rd Cir.1985); *In re Request for Judicial Assistance from the Seoul District Criminal Court, Seoul, Korea,* 555 F.2d 720, 723 (9th Cir.1977). In both cited cases, proceedings in a foreign tribunal were unquestionably underway. *Deere* involved a patent infringement action pending in the Federal Court of Canada; the issue was whether the subpoenaed evidence was discoverable under Canadian rules of procedure. The Korean case involved a pending criminal proceeding; the question presented on appeal was "whether a tribunal that has already entertained trial of the controversy and thus is aware of the issues presented and of what evidence would be relevant to those issues, can, under Korean law, request assistance on behalf of the tribunal where review is no pending." 555 F.2d at 723. Not surprisingly, the Ninth Circuit felt it unnecessary to navigate those unfamiliar waters of Korean criminal procedure; the request for judicial assistance was issued by a Korean criminal court judge, which the Ninth Circuit regarded as sufficient in the circumstances.

It is well recognized that § 1782 extends to the request of a foreign court for judicial assistance in a pending criminal prosecution against an individual. *In re Letters Rogatory from the Justice Court, District of Montreal, Canada,* 523 F.2d 562 (6th Cir.1975). Interestingly, however, the Sixth Circuit felt it necessary or at least pertinent to observe in that case that: "The Justice Court requested the assistance of our country's federal courts only after it had been satisfied that the bank account information was necessary to the prosecution's case." *Id.* at 563. And in the *Tokyo* case, *supra,* at least one individual had been indicted prior to the Japanese's court request for judicial assistance. 539 F.2d at 1218.

The case at bar appears to involve an ongoing prosecutorial investigation, in which no individual has yet been indicted, and there is no affirmative showing that the Brazilian court has played an independent, adjudicative function in determining whether or not to present the letters rogatory to this Court. I agree with petitioners that to enforce the letters rogatory in such circumstances would not so much break new ground as to skate over ice rendered dangerously thin by Judge Friendly's analysis in *India,* further explicated in *Fonseca.*

Accordingly on the present record I will not implement these letters rogatory. Petitioners suggest the necessity for an evidentiary hearing. A hearing was held by the district judge in *Fonseca.* However, I wish to explore the possibility of resolving the issue by affidavits. Both parties clearly have access to experts in Brazilian law and

procedure. I require affidavits addressing the particular questions considered in this opinion, which may be summarized thus: (1) Does the Brazilian court, presented with such a request by the police, tax, or currency control authorities, apply any independent criteria in determining whether or not to issue a request for judicial assistance, and if so, what are those criteria? (2) Is there presently pending in the Brazilian court a proceeding involving these petitioners, in the sense that the Brazilian court is exercising an independent, adjudicative function; and what is the precise nature of that proceeding and the court's functions?

The parties are directed to file and exchange main affidavits addressing these questions within thirty (30) days of the date of this Memorandum Opinion and Order; and reply affidavits (if so advised) within fourteen (14) days after service of the main affidavits. These time limits may be enlarged prior to their expiration, upon a showing of good cause.

Pending this Court's further order, the enforcement of the subpoena is stayed.

### B. *Petitioners' Standing.*

Two other points raised by the motion papers may be briefly disposed of.

█ The United States Attorney challenges petitioners' standing to make these arguments. The argument is that since the subpoena is directed not at them but at Morgan, petitioners lack standing because: "Ordinarily a party has no standing to seek to quash a subpoena to one who is not a party unless the party claims some personal right or privilege with regard to the documents sought." Brief at 13, citing and quoting 9 Wright & Miller, *Federal Practice and Procedure* § 2457 at 431.

Petitioners, as targets of the Brazilian inquiry, have a personal "right or privilege" within any sensible reading of the quoted text. There is no discernible difference between the position of these petitioners and that of the targeted individuals who moved to quash subpoenas of documents in the cases cited *supra* construing § 1782. None of the cases the government cites on the standing issue involves § 1782.

I conclude without difficulty that these petitioners have standing to move to quash this subpoena.

### C. *Procedures.*

Secondly, if the subpoena is ultimately enforced, subsequent proceedings will be governed by the Federal Rules of Civil Procedure. § 1782, while speaking generally in terms of the district court's discretion, gives the district court two procedural sources: the practice and procedure of the foreign country, or the Federal Rules of Civil Procedure. That is a choice spelled out more clearly in the regulations, 22 CFR § 92.67:

> "The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure."

█ I do not think that the criminal nature of the Brazilian authorities' investigation changes these explicit directions. Nor, in the circumstances of the case at bar, is the distinction purely academic. The government prefers to use the mechanics of Rule 17(c), F.R.Crim.P., which in its perception would permit Morgan to simply bundle up the account documents of the five Panamanian corporations and deliver them to Commissioner Imes for forwarding to Brazil. But a question of substance arises. The subpoena directs Morgan to produce documents reflecting Gebauer's defalcations from accounts "controlled by" the named individual petitioners. Morgan proposes to respond by turning over the records of Panamanian corporations. Morgan, in other words, is adjudicating the individual's "control" over the corporations. The government argues that, after all, Morgan had the accounts, and must know what it is doing. This is much too facile. If the case reaches its second

stage, I will permit counsel for petitioners, if so advised, to participate in a hearing before the commissioner and test Morgan's apparent conclusion that these corporate bank accounts were "controlled" by the individuals in question. In the event of dispute, the issues will be resolved by this Court before compliance with the subpoena is directed. But all this awaits a later day; we will first focus upon the threshold issue of § 1782's applicability.

The parties are directed to proceed in conformity with this opinion. Enforcement of the subpoena is stayed in the interim.

SO ORDERED.