**In re REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE (LETTER ROGATORY) FROM THE FEDERATIVE REPUBLIC OF BRAZIL.**

**Misc. No. M–13–72.**

United States District Court,
S.D. New York.

Nov. 16, 1988.

Engel & Mulholland, New York City, for petitioners Midland Trading Corp., Four Dimensions and Pendennis Corp.; Thomas E. Engel, of counsel.

Fox & Horan, New York City, for petitioners General Universal Trading Corp. and Dartois Investments, Inc.; Donald T. Fox, of counsel.

Rudolph W. Giuliani, U.S. Atty., D.N.Y., New York City, for U.S.; Nelson W. Cunningham, of counsel.

## OPINION AFTER FURTHER AFFIDAVITS

HAIGHT, District Judge:

This case arises on a petition to quash a subpoena *duces tecum* under letters rogatory issued by a Brazilian court at the initial request of a Brazilian prosecutor. The governing statute is 28 U.S.C. § 1782. I addressed the petition in a Memorandum Opinion and Order dated June 8, 1988, 687 F.Supp. 880, familiarity with which is assumed. That opinion directed the parties to submit further affidavits on the two questions set forth in the margin.[1] Further submissions and briefs have been received, and the case is ripe for decision.

■ Petitioners' eminent experts urge the threshold point that Judge Pimentel, the Brazilian judge issuing the letters rogatory, lacked authority under Brazilian law to do so. Judge Pimentel's declarations make clear her own perception that she had the requisite authority. I decline, in this § 1782 context, to "decide technical questions of foreign law relating to the subject-matter jurisdiction of foreign tribunals," *John Deere, Ltd. v. Sperry Corp.*, 754 F.2d 132, 136 (3rd Cir.1985). Such issues, together with the admissibility of the requested evidence in the foreign court, are generally regarded as beyond the appropriate competence of the court whose assistance is requested. *See also In Re Request for Assistance from Ministry of Legal Affairs of Trinidad and Tobago*, 848 F.2d 1151, 1156 (11th Cir.1988). A different view is sometimes taken with respect to "whether the evidence would be discoverable in the foreign country before granting assistance," *ibid.;* but petitioners at bar do not suggest that the Brazilian authorities lack the power to obtain the bank records

in suit if the bank was located in Brazil, rather than here.

Thus the case turns, as it has always done, upon whether the subpoenaed documents are, within the contemplation of § 1782, "for use in a proceeding in a foreign or international tribunal." I need not reiterate everything that was said in my prior opinion, which emphasized, naturally enough, the two Second Circuit opinions construing the statute: *In Re Letters Rogatory Issued by the Director of Inspection of the Government of India*, 385 F.2d 1017 (2d Cir.1967), and *Fonseca v. Blumenthal*, 620 F.2d 322 (2d Cir.1980). The most recent federal appellate decision is *Trinidad and Tobago, supra*, which the Eleventh Circuit decided on July 7, 1988.

As it happens, under date of June 21, 1988 I filed a Memorandum Opinion in *In Re Letters Rogatory from the Public Prosecutor's Office at the Regional Port of Hamburg, Federal Republic of Germany*, M–19–18 (S.D.N.Y.), granting the motion of the United States for reargument of a prior denial of an order appointing a commissioner under letters rogatory. In the *Hamburg* decision, I accepted the propositions that prosecutors in foreign countries were "interested persons" within the meaning of the statute; and that a proceeding in a foreign tribunal need not be actually pending at the time the request for judicial assistance was made. Slip op. at 4. I then said:

> "Accordingly I conclude, while doing no violence to Second Circuit authority, that a letter rogatory generated by a prosecutor falls within the statute so long as the application demonstrates clearly that there will be a proceeding in a foreign tribunal, and that the evidence sought will be used in that proceeding."

In *Trinidad and Tobago*, the Eleventh Circuit, affirming the district court's grant of judicial assistance, reached the same

---

1. (1) Does the Brazilian court, presented with such a request by the police, tax, or currency control authorities, apply any independent criteria in determining whether or not to issue a request for judicial assistance, and if so, what are those criteria? (2) Is there presently pending in the Brazilian court a proceeding involving these petitioners, in the sense that the Brazilian court is exercising an independent, adjudicative function; and what is the precise nature of that proceeding and the court's functions?

conclusions. On the last point, the court said:

Congress has given the district courts a great responsibility to determine whether to grant judicial assistance in foreign litigation. To prevent abuse, the district judge should carefully examine and given thoughtful deliberation to any request for assistance submitted by an "interested person" before a judicial proceeding has begun. The district judge should satisfy himself that a proceeding is very likely to occur. If the judge doubts that a proceeding is forthcoming, or suspects that the request is a "fishing expedition" or a vehicle for harassment, the district court should deny the request. In this case the district court concluded that a proceeding was probable and properly assisted the Minister of Legal Affairs by ordering the production of the bank records.

848 F.2d at 1156.

The submissions of petitioners' experts demonstrate clearly enough that "Brazilian criminal procedure is divided into two phases, pre- and post-accusatory." Petitioners' Supplemental Reply Memorandum at 5. I further accept petitioners' contention, based upon the presentations of their experts, that "adjudicative judicial criminal proceedings begin in Brazil only after the defendant is made party to the action and both sides to the controversy are before the courts." *Id.* at 7. Lastly, I accept that in the case at bar, there is no "adjudicative judicial criminal proceeding" presently pending in Brazil in respect of petitioners. However, as this Court concluded in *Hamburg,* and the Eleventh Circuit concluded in *Trinidad and Tobago,* that is not dispositive.

■ Having considered the entire record, including the most recent submissions of Judge Pimentel and the Brazilian prosecutor, I perceive no rational basis for "doubts that a proceeding is forthcoming," *Trinidad and Tobago* at 1156. On the contrary, I regard such a proceeding as probable. Judge Pimentel has written to this court an official letter dated July 14, 1988, in which she refers (in translation) to the prosecu-

tor's action in "investigating *probable* illicit acts related to tax evasion in connection with *probable* defalcations in accounts maintained by Brazilian citizens at the Morgan Guarantee Trust Company of New York ..." (emphasis added). Judge Pimentel goes on "to emphasize that the information requested is to be used exclusively as evidence in a judicial proceeding. It will not be used for any other purpose."

I conclude that these declarations, viewed in the totality of the circumstances, sufficiently establish the likelihood of a judicial proceeding being commenced in Brazil. In the exercise of my discretion, I extend judicial assistance to the Brazilian authorities.

■ The procedures to be followed here require final consideration. The United States initially argued on behalf of the Commissioner appointed under the letters rogatory that, given the particular wording of the subpoenas, petitioners lacked standing to move to quash them. That argument appeared to me entirely untenable at the time, *see* 687 F.Supp. at 887; and the United States now abandons the contention, at least in respect of the subpoena's issuance. Supplemental Memorandum at 884–885. But the United States continues to argue that petitioners are not entitled to participate in a hearing before the Commissioner to test the apparent conclusion of Morgan Guarantee that the corporate bank accounts at Morgan were "controlled" by the individuals in question. I extended to petitioners such a right of participation in 687 F.Supp. at 887–888.

I adhere to that conclusion. In *Trinidad and Tobago,* the Eleventh Circuit said at 1156 n. 12:

The release of the bank records also will not violate any United States law or privilege. The records will be released in conformance with the Right to Financial Privacy Act, 12 U.S.C. §§ 3401–22 (1982).

The Eleventh Circuit does not analyze the applicability of the Right to Financial Privacy Act to discovery of bank records under letters rogatory; but the broad definitions of that statute, § 3401, would seem by their plain meaning to apply, and Con-

gress clearly attached public policy significance to the confidentiality of deposits in American banks. I know of no Second Circuit authority on the point, but follow the lead of the Eleventh Circuit in directing that the bank records at bar be released in conformance with the Right to Financial Privacy Act.

It necessarily follows that the petitioners may be heard on the issue of control. The statute at § 3410 provides for "customer challenges"; and one of the issues for court determination under that section is whether the applicant for judicial relief "is not the customer to whom the financial records sought by the Government authority pertain ..." § 3410(c).

Accordingly I adhere to the procedural aspects of my prior opinion.

I lift the stay of enforcement of the subpoena, and direct the parties to proceed in conformity with this opinion.[2]

SO ORDERED.

---

**2.** If judicial supervision of subsequent proceedings proves necessary or even desirable, I will make an order of reference to a United States Magistrate. Counsel for the parties may express their views to me on that point by letter.