## IN THE MATTER OF A RHODE ISLAND SELECT COMMISSION SUBPOENA.

Norfolk. May 4, 1993. - July 21, 1993.

Present: LIACOS. C.J , WILKINS. ABRAMS, & LYNCH, JJ.

*Contempt. Subpoena. Comity. Witness*, Subpoena. *Moot Question. Words*, "Tribunal."

A proceeding for contempt, arising from a party's refusal to obey discovery orders issued pursuant to G. L. c. 223A, § 11, by a judge of the Superior Court on the application of a Rhode Island investigative commission, was not rendered moot by the circumstance that the commission had completed its tasks and issued its final report, where an act of the Rhode Island Legislature had established a successor entity entitled to all of the evidence that the commission was authorized to obtain. [893-894]

An investigative commission established by the Rhode Island Legislature was not a "tribunal" entitled under G. L. c. 223A, § 11, to seek a discovery order from the Massachusetts Superior Court, where the commission's function was not to make binding adjudications of fact or law regarding the rights of litigants in specific cases, but, rather, was to make recommendations to the executive and legislative branches of government. [894-896]

MOTION for contempt filed in the Superior Court Department on March 12, 1992.

The proceeding was heard by *Richard G. Stearns*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Carolyn M. Conway* for Cullen, Murphy & Co., P.C.

*John J. McConnell, Jr.*, for Rhode Island Depositors Economic Protection Corporation.

ABRAMS, J. At issue is the question whether an adjudication of contempt against Cullen, Murphy & Co., P.C. (Cullen), an accounting firm, was proper. The Rhode Island Se-

lect Commission to Investigate the Failure of RISDIC (Rhode Island Share and Deposit Indemnity Corporation) Insured Financial Institutions (commission) filed a motion to compel discovery and issued a subpoena duces tecum. Cullen refused to produce tax returns and other documents of some of its clients sought by the commission. A Superior Court judge entered an order adjudicating Cullen in contempt of the court's order allowing the commission's motion to compel discovery. Cullen appeals from the adjudication of contempt. Cullen argues that the commission was not a "tribunal" within the meaning of G. L. c. 223A, § 11 (1992 ed.). We transferred the matter here on our own motion.[1] We agree with Cullen that the commission was not a "tribunal" under G. L. c. 223A, § 11. We vacate the Superior Court judge's determination that Cullen be held in contempt.

*Factual background.* The commission stated in its brief that RISDIC, a private fund, insured deposits in several Rhode Island financial institutions. In 1990, RISDIC's funds were drained as a result of financial difficulties at RISDIC-insured institutions. On December 31, 1990, RISDIC entered conservatorship. In January, 1991, the Governor of Rhode Island ordered that RISDIC-insured financial institutions be closed.

In March, 1991, the Rhode Island Legislature created the commission to investigate the events that led to the failure of RISDIC-insured institutions. The commission's responsibilities included, "but [were] not . . . limited to: '[i]nvestigation of the causes of the collapse of RISDIC and the failure of many of its insured financial institutions[;] [i]nvestigation of the role played by officials and agencies of state government in the evolution of this financial crisis[;] [i]nvestigation of financial transactions at the RISDIC insured institutions which may have resulted from improper and/or insider influence and/or information[;] [i]nvestigation of those individu-

---

[1]After transfer to this court, Cullen moved to dismiss this appeal as moot, because the commission had completed its mission and issued its final report. We conclude that the appeal is not moot. See *infra* at 893-894.

als and entities whose negligence and/or misconduct directly or indirectly contributed to the financial loss sustained by the state and its citizens[;] [m]aking a public presentation of the evidence uncovered by the aforesaid investigation at hearings to be conducted by the commission[;] [m]aking recommendations as to prosecutions for any criminal wrongdoing uncovered by the investigation[;] [m]aking recommendations as to civil litigation against those individuals and entities whose negligence and/or misconduct were contributing factors in the financial loss sustained by the state and its citizens[;] [and] [m]aking recommendations as to legislation reforming governmental ethical standards and restructuring the bank regulatory system in this state." 1991 R.I. Pub. Laws 91-015, § 1. Cullen, an accounting firm in Norwood, Massachusetts, provided accounting services for persons and companies who received loans from RISDIC-insured institutions.

On November 19, 1991, a Rhode Island Superior Court judge issued an order pursuant to R.I. Gen. Laws § 9-18-5 (1992 Supp.), 1991 R.I. Pub. Laws No. 91-015, and Select Commission Rule 1(f), allowing the commission to seek an order from a Massachusetts court compelling testimony and production of documents from Cullen. On December 11, 1991, a Massachusetts Superior Court judge authorized the issuance of a subpoena duces tecum to Cullen and ordered Cullen to appear before the commission. On December 19, 1991, Cullen received the subpoena duces tecum.

Cullen moved to quash the subpoena duces tecum. The commission opposed the motion, and moved to compel discovery. On January 16, 1992, the Superior Court judge denied Cullen's motion to vacate the order of December 11, and quash the subpoena duces tecum. A few days later the judge allowed the commission's motion to compel discovery. During Cullen's deposition on February 11, 1992, Cullen refused to produce any document listed on the subpoena duces tecum. Cullen sought interlocutory review of the discovery order. A single justice of the Appeals Court denied Cullen's petition for interlocutory review. See *Application of O'Brien*, 403 Mass. 1005 (1988).

Shortly thereafter, the commission moved that Cullen be ruled in contempt for its failure to produce the documents. The Superior Court judge issued an order adjudicating Cullen in contempt of the order allowing the commission's motion to compel discovery. Cullen appeals the adjudication of contempt. See *Matter of a R.I. Grand Jury Subpoena*, 414 Mass. 104, 107 (1993) (when subpoena directed at allegedly privileged records held by accountant, "in order to obtain appellate review of the subpoena, the accountant [must] disobey it"). The contempt order was stayed pending appeal. See *Matter of a Grand Jury Subpoena*, 411 Mass. 489, 499 (1992) ("In cases like this one, involving third-party privilege holders, assuming that the objections to the subpoena are nonfrivolous, we urge trial judges to stay orders of contempt pending appeal provided the appealing party acts promptly").

*Mootness.* After the case was transferred to this court, Cullen moved to dismiss this appeal on the ground of mootness. Cullen argues that the commission completed its mission and issued its final report, and therefore "there are no further proceedings before the . . . commission to which the documents requested in the subpoena can be considered germane." The commission opposed the dismissal of the appeal because the Rhode Island Depositors Economic Protection Corporation (DEPCO), a successor to the commission, is entitled to the documents.[2]

The Rhode Island Legislature established DEPCO, specifically stating that DEPCO "shall be entitled to obtain, have access to and use in its absolute discretion all materials, documents, instruments, investigations, data, information, and knowledge obtained, provided for or produced in connection with the work of the commission and shall have the right to employ for its own purposes the services of any of the accountants, consultants, or investigators employed by the commission at its own expense." R.I. Gen. Laws § 42-116-39

---

[2]The commission moved to substitute DEPCO as the appellee. That motion was allowed.

(1992 Supp.). DEPCO therefore is entitled to all evidence properly obtained by the commission. Further, DEPCO notes that all the evidence and materials in the commission's possession have been transferred to DEPCO's custody. We conclude that DEPCO, as the properly substituted party, is entitled to all the documents that the commission was entitled to receive. Therefore, the question whether the commission was a tribunal is not moot.

*The commission's status as a "tribunal."* General Laws c. 223A, § 11 (1992 ed.), pursuant to which the Massachusetts subpoena duces tecum issued, provides in relevant part: "A court of this commonwealth may order a person who is domiciled or is found within this commonwealth to give his testimony or statement or to produce documents or other things for use in a proceeding in a tribunal outside this commonwealth." In determining the Legislature's intent in enacting § 11, we are guided by the Federal courts' analysis of 28 U.S.C. § 1782 (a) (1988), the language of which § 11 substantially tracks.[3]

In *In re Letters of Request to Examine Witnesses from the Court of Queen's Bench for Man., Can.,* 59 F.R.D. 625 (N.D. Cal.), aff'd per curiam, 488 F.2d 511 (9th Cir. 1973) (hereinafter, *Manitoba*), the District Court, construing 28 U.S.C. § 1782 (a), stated that "the power to make a binding adjudication of facts or law as related to the rights of litigants in concrete cases . . . common to conventional courts and quasi-judicial bodies alike, . . . determines whether an institution is a tribunal within the meaning of § 1782." *Id.* at 630. Entities which make recommendations to executive or legislative branches of government do not qualify as tribunals under § 1782. *In re Letters Rogatory from the Tokyo Dist., Tokyo, Japan,* 539 F.2d 1216, 1219 (9th Cir. 1976) (hereinafter, *Tokyo*) (distinguishing *Manitoba*). The "hallmark of a tribunal [is] impartial adjudica-

---

[3]Section 1782 (a) of 28 U.S.C. provides in pertinent part: "The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal."

tion." *Fonseca* v. *Blumenthal*, 620 F.2d 322, 324 (2d Cir. 1980). *In re Request for Int'l Judicial Assistance (Letter Rogatory) for Brazil*, 687 F. Supp. 880, 885 (*Brazil I*), *S.C.*, 700 F. Supp. 723 (S.D.N.Y. 1988) (*Brazil II*), *S.C.*, 936 F.2d 702 (2d Cir. 1991) (*Brazil III*). Judicial assistance is available under § 1782 depending on whether the requested evidence will be used in a judicial proceeding. *Brazil III*, *supra* at 706 (adjudicative proceedings must be very likely and very soon to be brought). See *In the Matter of the Application of Sumar*, 123 F.R.D. 467, 470-471 (S.D.N.Y. 1988). See also *Matter of a R.I. Grand Jury Subpoena*, 414 Mass. 104 (1993); *Matter of a Grand Jury Subpoena*, 411 Mass. 489, 499 (1992).

Our examination of the commission's mandate reveals that the commission was not a tribunal. The commission could not make binding adjudications of fact or law regarding the rights of litigants in specific cases. See *Manitoba*, *supra* at 630. Unlike a grand jury, which investigates and has the authority to indict, the commission's mandate was to make recommendations to the executive and legislative branches of government. That the commission could make nonbinding findings of fact in pursuit of these objectives does not qualify it as an entity which adjudicates facts or law. See *Tokyo*, *supra* at 1219.

The commission made no showing that the evidence it acquired will be used in a judicial proceeding, *Application of Sumar*, *supra*, or that such an adjudicative proceeding is very likely or very soon to be brought. See *Brazil III*, *supra* at 706. The commission was charged with making a public presentation of the evidence it acquired and making recommendations to the executive branch for prosecutions, and to the legislative branch for statutory changes.

There are significant differences between the commission and a grand jury. A grand jury "is an investigatory and accusatory body." *Commonwealth* v. *McLeod*, 394 Mass. 727, 733, cert. denied sub nom. *Aiello* v. *Massachusetts*, 474 U.S. 919 (1985), quoting *Brunson* v. *Commonwealth*, 369 Mass. 106, 120 (1975). " '[T]he grand jury perform[s] the impor-

tant task of determining whether there is probable cause to indict an accused,' *Commonwealth* v. *McLeod, supra,* thereby 'protecting citizens against unfounded criminal prosecutions.' *Branzburg* v. *Hayes,* 408 U.S. 665, 686-687 (1972)." *Commonwealth* v. *Cote,* 407 Mass. 827, 832 (1990). See *Matter of Pappas,* 358 Mass. 604, 613 (1971), aff'd, *Branzburg* v. *Hayes,* 408 U.S. 665 (1972), quoting *Grand Jurors for Worcester County for the Year 1951* v. *Commissioner of Corps. & Taxation,* 329 Mass. 89, 91 (1952) (grand jury is "an appendage, a branch, an integral part of the court acting under the authority of the court"). Grand juries may return indictments and issue subpoenas.[4] *United States* v. *Calandra,* 414 U.S. 338, 343-344 (1974). G. L. c. 263, § 4 (1992 ed.). The commission neither served the function of nor possessed the authority of a grand jury.

There is no record basis for concluding that the commission was a tribunal within the meaning of G. L. c. 223A, § 11. The Superior Court judge's adjudication of contempt is vacated.[5]

*So ordered.*

---

[4]The Legislature has expressly set forth the procedure to be followed in issuing subpoenas to obtain evidence to be used in out-of-State grand jury proceedings. G. L. c. 233, §§ 13A-13D (1990 ed.). See *Matter of a R.I. Grand Jury Subpoena,* 414 Mass. 104 (1993).

[5]Additionally, the order compelling discovery, and the order authorizing the issuance of the subpoena duces tecum, also should be vacated.