**In re LETTER OF REQUEST FROM the CROWN PROSECUTION SERVICE OF the UNITED KINGDOM, Thomas J. Ward, Appellant.**

No. 88–5122.

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 5, 1988.

Decided March 17, 1989.

Howard W. Gutman, with whom David D. Aufhauser, and Mark J. Hulkower were on the brief, for appellant.

John C. Cleary, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., John D. Bates, and R. Craig Lawrence, Asst. U.S. Attys., were on the brief, for appellee.

Before RUTH BADER GINSBURG and SILBERMAN, Circuit Judges, and GIBSON, Senior Circuit Judge.*

Opinion for the Court filed by Circuit Judge RUTH BADER GINSBURG.

RUTH BADER GINSBURG, Circuit Judge:

This case concerns the propriety of a district court order for the taking of evidence in aid of foreign criminal proceedings. By order filed January 21, 1988, the district court appointed Commissioners to obtain evidence sought by the Crown Prosecution Service of the United Kingdom. The order was made, on application of the United States, pursuant to 28 U.S.C. § 1782 (1982), which authorizes assistance to foreign and international tribunals and to litigants before such tribunals.

Appellant Thomas J. Ward, a central figure in the matters on which proof was requested, moved in the district court to quash the appointment of the Commissioners and the subpoenas they issued; alternately, Ward sought a protective order limiting use of the information collected by the Commissioners. On March 21, 1988, the district court denied Ward's motion, *In re Letter of Request from the Crown Prosecution Serv. of the U.K.*, 683 F.Supp. 841 (D.D.C.1988), and Ward now appeals.

We affirm the district court's judgment in principal part. The Crown Prosecution Service, we hold, qualifies as an "interested person" competent to request aid under section 1782. The judicial proceeding for which assistance is sought, we further hold, need not be pending at the time of the request for assistance; it suffices that the proceeding in the foreign tribunal and its contours be in reasonable contemplation when the request is made. We remand the case, however, so that the district court may ensure that the evidence is taken in a manner appropriate for use in judicial proceedings in the United Kingdom.

I. BACKGROUND

The Crown Prosecution Service of the United Kingdom, headed by the Director of Public Prosecutions, is required under the provisions of the Prosecution of Offences Act 1985 "to take over the conduct of all [major] criminal proceedings in England and Wales ... instituted on behalf of a police force"; by Letter of Request dated September 30, 1987, the Service applied through diplomatic channels for "judicial assistance in the transmission of certain information." Commission Rogatoire from Crown Prosecutor F.J. Coford to Competent Judicial Authorities at 1 (Sept. 30, 1987) [hereinafter Letter]. The Letter explained:

The Director of Public Prosecutions is conducting criminal proceedings against Ernest Saunders, the former Chief Executive of Guinness PLC ("Guinness"), who is presently charged with attempting to

---

* Of the United States Court of Appeals for the Eighth Circuit, sitting by designation pursuant to 28 U.S.C. § 294(d).

pervert the course of justice and destruction and falsification of documents. In connection with these proceedings, enquiries are being conducted by the Company Fraud Department of the Metropolitan and City of London Police into allegations of an illegal share support scheme pursued in relation to the takeover by Guinness of the Distillers Company....

*Id.* Prior to the dispatch of the Letter, on or about May 7, 1987, Saunders was arrested and charged with criminal conduct. Declaration of Robert R. Chapman at 2. These initial charges—attempt to pervert the course of justice, and destruction and falsification of documents—were substantially augmented in the following months. *Id.*

The Guinness share support scheme, according to the Letter, involved several questionable payments. One alleged recipient was Guinness insider Sir Isadore Jack Lyons of London. Another was Thomas Ward, a Guinness director, United States citizen, and Washington, D.C., attorney. Letter at 2. Lyons had asserted that a portion of the payment made to him was for the purchase by Guinness, in October 1986, of Lyons' cooperative apartment at Watergate South in Washington, D.C. The transferee of record on the documents relating to the sale of the Lyons' apartment, however, is Ward. *Id.* at 3. To "carry out a proper investigation and assist a prosecution" in London, *id.*, the Crown Prosecutor sought statements and relevant documents about the Watergate apartment sale from: (1) Watergate South, Inc.; (2) the law firm of Hogan & Hartson, believed to have represented Lyons in both the 1980 acquisition and the 1986 sale of the apartment; and (3) Cafritz Company, believed to be managing agent for the Watergate South apartments. *Id.* at 3–4. The Crown Prosecutor also sought evidence on Lyons' fees and remuneration and on other matters from Bain & Company, Boston, management consultants for Guinness. *Id.* at 4.

The Letter represented that the Crown Prosecutor sought statements "in a form which is admissible in the English courts," *id.* at 3, and clarified that the persons from whom information was sought "at this stage ... are not suspected of complicity in any criminal offenses and they will be treated as potential prosecution witnesses." *Id.* at 4. On or about October 13, 1987, following dispatch of the Letter, but before its presentation to the district court, Saunders was charged with thirty-seven additional offenses, including violations of the Theft Act 1968 and Companies Act 1985. Declaration of Robert R. Chapman at 2.

By diplomatic note dated October 19, 1987, the British Embassy in Washington, D.C., forwarded the Letter to the U.S. Department of State. On November 16, 1987, after routine processing, the State Department forwarded the Letter to the Office of International Affairs (OIA), Criminal Division, U.S. Department of Justice. On January 5, 1988, the OIA forwarded the Letter to the U.S. Attorney's Office for the District of Columbia. Responding to the U.S. Attorney's *ex parte* application, the district court, on January 21, 1988, appointed Robert R. Chapman, Assistant U.S. Attorney, and John E. Harris, OIA Associate Director, as Commissioners of the Court pursuant to 28 U.S.C. § 1782; the district judge instructed the Commissioners "to obtain evidence from the witnesses in conformity with the letter of request," and "to transmit [the] certified evidence to the Crown Prosecution Service in the United Kingdom." Misc. No. 88–0028 (D.D.C. Jan. 21, 1988) (order). Section 1782(a), the authority for the district court's order and the prescription centrally at issue in this case, provides in most pertinent part:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.

28 U.S.C. § 1782(a).

Ward moved to quash the order appointing the Commissioners, along with all sub-

poenas issued by the Commissioners. Alternately, Ward sought a protective order to limit the use of the information gathered. His principal objection was and remains that the evidence was not sought "for use in a [judicial] proceeding," as required by section 1782, but by "Scotland Yard," for a police investigation with no "proceeding in a ... tribunal" yet in the picture. Concluding that the statute does not require "that the judicial proceeding be pending at the time assistance is sought under Section 1782," the district court, on March 21, 1988, denied Ward's motion. 683 F.Supp. at 844. Ward filed a notice of appeal on April 5, 1988.

The Commissioners thereafter refused Ward's request to attend and participate, through counsel, in the witness interviews. On June 28, 1988, Ward petitioned the district court to enforce his alleged "right of attendance at depositions of third-party witnesses." The district court denied Ward's motion. Misc. No. 88–0028 (D.D.C. July 14, 1988) (order).

Meanwhile, the criminal proceedings developed further in the United Kingdom. A warrant for the arrest of Ward for violations of the Theft Act 1968 issued on or about February 2, 1988 and remains unexecuted. Declaration of Robert R. Chapman at 3. On or about December 16, 1988, a sixty-five count indictment was lodged with the Central Criminal Court (Old Bailey) charging seven defendants, including Saunders and Lyons, with multiple criminal offenses. *Id.* at 2. Ward, although not indicted, is named as a co-conspirator in three of the counts, and is also identified in two other counts. *Id.* at 3. The indictment is now pending trial with an anticipated trial date later this year. *Id.*

## II. DISCUSSION

### A. Ward's Standing

■ The government maintains that Ward lacks a protectable interest, because the Commissioners seek no evidence from him. Brief for Appellees at 9. At the March 10, 1988 hearing before the district court, however, the government conceded that Ward was "a potential target" in a "wide-ranging" British investigation. Transcript at 22. The precedent in point is uniform and we adhere to it. A person situated as Ward is, one against whom information obtained under section 1782 may be used, has standing to assert that, to his detriment, the authority for which the section provides is being abused. *See In re Request for Judicial Assistance from the Seoul Dist. Crim. Ct., Seoul, Korea,* 555 F.2d 720, 723 (9th Cir.1977); *In re Letter Rogatory from the Justice Ct., Dist. of Montreal, Canada,* 523 F.2d 562, 564 (6th Cir.1975); *In re Request for Int'l Judicial Assistance (Letter Rogatory) from the Federative Republic of Brazil,* 687 F.Supp. 880, 887 (S.D.N.Y.1988).[1]

### B. The Crown Prosecution Service's Qualification as an "Interested Person" Within the Meaning of 28 U.S.C. § 1782(a)

■ The Crown Prosecution Service's competence as an assistance requester is not subject to genuine debate. As Professor Hans Smit, the dominant drafter of, and commentator on, the 1964 revision of 28 U.S.C. § 1782 has observed:

An application for judicial assistance under Section 1782 may ... be made [by a foreign or international tribunal or] by any interested person. The latter term is intended to include not only litigants before foreign or international tribunals,

---

1. *Cf. Donaldson v. United States,* 400 U.S. 517, 532, 91 S.Ct. 534, 543, 27 L.Ed.2d 580 (1971) (addressing on the merits the taxpayer's claim that summonses issued to his former employer and its accountant were "'sought for the improper purpose of obtaining evidence for use in a criminal prosecution'" and were therefore outside the scope of I.R.C. § 7602) (quoting *Reisman v. Caplin,* 375 U.S. 440, 449, 84 S.Ct. 508, 513, 11 L.Ed.2d 459 (1964)); *United States v. Genser,* 582 F.2d 292, 306 (3d Cir.1978) ("If the civil limitation placed upon § 7602 summonses is not for the taxpayer's benefit, we have difficulty in discerning the party for whose protection it was designed."); *In re Grand Jury Proceedings (Fernandez),* 814 F.2d 61, 66–68 (1st Cir.1987) (movant allowed to challenge use of a grand jury to collect evidence for use in another case in which movant had already been indicted).

but also foreign and international officials as well as any other person ... [who] possess[es] a reasonable interest in obtaining the assistance.

Smit, *International Litigation Under the United States Code*, 65 COLUM.L.REV. 1015, 1027 (1965).[2] A foreign legal affairs ministry, attorney general, or other prosecutor, courts have repeatedly held, fits squarely within the section 1782 "interested person" category. *See In re Request for Assistance from Ministry of Legal Affairs of Trinidad & Tobago*, 848 F.2d 1151, 1155 (11th Cir.1988), *cert. denied,* — U.S. —, 109 S.Ct. 784, 102 L.Ed.2d 776 (1989); *Young v. United States Dep't of Justice*, No. 87 Civ. 8307 (JFK), slip op. at 14–16, 1988 WL 131302 (S.D.N.Y. Nov. 28, 1988); *In re Request for Int'l Judicial Assistance (Letter Rogatory) from the Federative Republic of Brazil*, 700 F.Supp. 723, 724 (S.D. N.Y.1988); *In re Letter Rogatory from the Public Prosecutor's Office at the Regional Ct. of Hamburg, Fed. Republic of Germany*, Misc. No. M–19–88, slip op. at 4 (S.D. N.Y. June 21, 1988) (mem.).

### C. *The Proceedings for Which Assistance Is Sought Under 28 U.S.C. § 1782 Must Be Judicial, But Need Not Be Pending at the Time Aid Is Requested*

The former version of section 1782, Pub. L. No. 773, ch. 646, 62 Stat. 949 (1948) (amended 1949 and 1964), required that testimony requested be sought for use "in any judicial proceeding pending in any court." Specifically "to facilitate the gathering of evidence prior to the institution of litigation abroad," the drafters of amended section 1782 eliminated the word "pending." Smit, *supra*, at 1026–27 n. 72. The congressional purpose to "liberalize[ ] existing U.S. procedures" is not in doubt, *see* S.REP. No. 1580, 88th Cong., 2d Sess. 7, *reprinted in* 1964 U.S.CODE CONG. & ADMIN.NEWS 3782, 3788; the expectation or hope was that by making assistance generously available through the good offices of United States officials and courts, our country would set an example foreign courts and authorities could follow when asked to render aid to United States courts, authorities, and litigators. As stated in the leading commentary, amended section 1782, "[i]n contradistinction to its predecessor, ... provides explicitly for American judicial assistance in obtaining documentary and other tangible evidence as well as testimony." Smit, *supra*, at 1026. There is but one limitation on the nature of the evidence an "interested person" may request. The evidence

must be sought for use in a proceeding in a foreign or international tribunal. It is not necessary, however, for the proceeding to be pending at the time the evidence is sought, but only that the evidence is eventually to be used in such a proceeding.

*Id.* (footnotes omitted).

Ward observes that when the Letter was presented to the district court for execution, in January 1988, there was only a circumscribed indictment, one against Saunders alone, then pending. *See supra* p. 688. He urges that the evidence sought ranged far beyond that proceeding, that Congress itself never referred, in statutory text or legislative history, to the significance of the deletion from section 1782 of the word "pending," and that there is case law support for retention of a "proceeding must be pending" prerequisite to assistance. In accord with the district court, we find that the cases Ward cites do not bear out his contention. All of them make the unexceptionable point that there must be in the picture a proceeding before a judicial tribunal, but none of them requires that the proceeding be underway prior to the request for aid. *See In re Letters Rogatory Issued by the Director of Inspection of the Gov't of India*, 385 F.2d 1017, 1021 (2d Cir.1967) (holding that sec-

**2.** Professor Smit functioned as the Director of the Project on International Procedure at the Columbia Law School beginning in June 1960. He also acted as the Reporter to the United States Commission on International Rules of Judicial Procedure, a body created by Congress first to study United States rules relating to litigation with international aspects, then to propose appropriate legislative reforms. The Commission's proposals, all of them accepted by Congress without change, are collected in INTERNATIONAL CO-OPERATION IN LITIGATION: EUROPE (H. Smit ed. 1965). Amended 28 U.S.C. § 1782 was one of the products of the Commission's efforts.

tion 1782 permits assistance only for proceedings before adjudicative forums and, on that account, denying assistance to an Indian Income–Tax Officer conducting a tax assessment inquiry with no judicial proceeding indicated as in the offing); *In re Letters of Request to Examine Witnesses from Ct. of Queen's Bench for Manitoba, Canada,* 488 F.2d 511, 512 (9th Cir.1973) (denying assistance to a Canadian Commission of Inquiry "whose purpose is to conduct investigations unrelated to judicial or quasi-judicial controversies"), *aff'g* 59 F.R.D. 625, 629 (N.D.Cal.) (noting that the Commission was merely "to enquire into, ascertain and report upon" a forestry and industrial complex in Manitoba); *Fonseca v. Blumenthal,* 620 F.2d 322, 324 (2d Cir. 1980) (denying assistance to investigation by the Superintendent of Exchange Control of the Republic of Colombia).

■ In brief, while we recognize that passages in some of the above-cited cases could be read to support Ward's argument, the district court correctly summed the precedent upon which Ward relies: "Those cases deal with the question of who or what constitutes a 'tribunal' as that term is used in the statute.... [T]hat is not an issue in this case." 683 F.Supp. at 843–44. Here, the Crown Prosecution Service makes the section 1782 request as an "interested person," not as a "tribunal"; the evidence is sought for use in criminal proceedings in British courts, and there is no question that British courts qualify as "tribunals." In common with a sister circuit that has recently considered the same question, "[w]e will not treat Congress' deletion of the word 'pending' as a mistake or mere accident." *Trinidad,* 848 F.2d at 1155.[3] Recognizing that judicial proceedings in a tribunal must be within reasonable contemplation, although they need not be pending, we turn to the question decisive for proper application of section 1782: Was there sufficient indication that a proceeding in court would eventuate in which the evidence gathered can be weighed impartially?

### D. *The Likelihood of Proceedings in a Tribunal*

In *Trinidad,* the Eleventh Circuit stated: "The district judge should satisfy himself that a proceeding is very likely to occur." *Trinidad,* 848 F.2d at 1156. The appeals court found that the district judge had done so, observing that the Minister of Legal Affairs had "set forth the documents he desired, the information he expected to find, and the reason he would use the documents in the eventual proceeding," and had "requested the production of documents in a particular form to ensure their admissibility in the future criminal proceeding." *Id.*[4] Accordingly, the Eleventh Circuit determined that "the district court could reasonably conclude that the records would be used in a criminal trial" rather than for some other purpose.[5]

The district court in this case reasonably reached the same conclusion. Proceedings had already commenced against Saunders, Letter at 1; they have since commenced against others; and Ward, although unindicted, has been named in the most recent indictment as a co-conspirator in three of the counts. The Letter seeks "statements in a form which is admissible in the English courts" and "documents ... which will be required as exhibits." *Id.* at 3. Those interviewed "will be treated as potential prosecution witnesses." *Id.* at 4. The evidence, then, is sought for probable use in proceedings, if not against Ward himself,

3. The Eleventh Circuit cited *In re Letters Rogatory from the Tokyo District, Tokyo, Japan,* 539 F.2d 1216, 1217 (9th Cir.1976), which granted "assistance in the taking of in camera depositions" that "were to be used in criminal investigations and possible future criminal trials in Japan."

4. As Ward notes, many criminal investigations never progress to such proceedings. We agree that requests for information cannot be granted merely on the off chance or undocumented allegation that someday a judicial proceeding may follow.

5. *Trinidad,* 848 F.2d at 1156 ("If the judge doubts that a proceeding is forthcoming, or suspects that the request is a 'fishing expedition' or a vehicle for harassment, the district court should deny the request. In this case the district court concluded that a proceeding was probable...."); *accord Brazil,* 700 F.Supp. at 725; *Hamburg,* slip op. at 5.

then at least against Saunders, Lyons, and others closely linked to Guinness.

Ward argues that the Saunders proceedings do not suffice to support the section 1782 inquiries because "[e]veryone below ... recognized and agreed that this letter of request sought assistance to permit British police and investigating prosecutors to conduct a criminal investigation." Reply Brief of Appellant Thomas J. Ward at 2. The Letter itself confirms that district court aid was invoked to assist an "investigation" into "possible breaches of the criminal law." Letter at 3. But "investigation" of the Guinness takeover of the Distillers Company, and gathering evidence for use in a trial of a Guinness principal or principals are not mutually exclusive endeavors. Significantly, the government's arguments before the district court relied on the already initiated Saunders proceedings *as well as* the prospect of future proceedings against Lyons, Ward, or others active in Guinness affairs. *See* Transcript at 20, 22.

Ward further asserts that the criminal charges pending against Saunders cited in the Letter "did not concern the stock manipulation" itself, although Saunders was "charged with obstruction for allegedly destroying documents relevant to the criminal stock manipulation investigation." Brief of Appellant Thomas J. Ward at 5. Even if the evidence sought in the Letter is not for use in the prosecution of those initial counts, however, it is undisputed that other indictments soon followed. Ward concedes that since the Letter was sent, several individuals other than Saunders have been charged with multiple substantive violations concerning the alleged stock support scheme. *Id.* at 5 n. 2. The requested evidence is adequately tied to now actual proceedings.

In sum, we agree that, to guard against abuse of section 1782, the district court must insist on reliable indications of the likelihood that proceedings will be instituted within a reasonable time. In this case, the district court was satisfied, as are we, that a proceeding involving specific individuals, including Saunders, Lyons, and Ward, and a particular subject matter, the alleged stock manipulation scheme, was in reasonable contemplation. The district court had cause to believe that the evidence sought would be used in the criminal proceedings growing out of the Guinness investigation. The rationality of the district court's belief was further demonstrated or confirmed when British authorities advised United States authorities of the sixty-five-count, seven-defendant indictment and the warrant for the arrest of Ward.

### E. *The Evidence–Taking Procedures*

■ Ward finally argues that Congress could not have intended to give British authorities interrogation powers that United States authorities do not possess.[6] Because prosecutors in the United States are not authorized to compel *in camera* witness interviews, Ward maintains, the Crown Prosecution Service cannot be allowed to do so. Brief of Appellant Thomas J. Ward at 33. The district court refused to allow Ward to attend the "depositions" of third-party witnesses, stating that "the British authorities are in the process of investigating this matter, much like a police investigation or even a grand jury investigation in this country." Misc. No. 88–0028 (D.D.C. July 14, 1988) (order). This is the sole aspect of the district court's handling of the matter that gives us pause.

The district court should have inquired more closely whether the projected evidence-taking procedure "represents the British practice," *id.,* when use of the evidence in court is anticipated.[7] As the legis-

6. Ward also argues that § 1782 is limited by Federal Rule of Civil Procedure 27(a), which allows depositions before a complaint has been filed only in certain narrow circumstances and only with notice to and participation by the adverse party. Brief of Appellant Thomas J. Ward at 22, 25. Section 1782, however, merely provides: *"To the extent that the order does not*

*prescribe otherwise,* the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure." 28 U.S.C. § 1782(a) (emphasis added). The district court retains discretion to prescribe other procedures.

7. *See Trinidad,* 848 F.2d at 1156 ("[T]he district court must decide whether the evidence would

lative history states, section 1782 "liberalizes existing U.S. procedures for assisting foreign and international tribunals and litigants in obtaining oral and documentary evidence in the United States"; the section allows for adjustment of evidence-taking procedures "to the requirements of foreign practice and procedure," and "permits, but does not command, following the foreign or international practice." S.REP. No. 1580, *supra,* at 7, 8–9, *reprinted in* 1964 U.S. CODE CONG. & ADMIN.NEWS at 3788, 3789 (the district court has "complete discretion in prescribing the procedure to be followed"); *see* 28 U.S.C. § 1782(a) ("the practice and procedure ... may be in whole or part the practice and procedure of the foreign country").[8]

. Ward asserts that if the Letter truly sought evidence for use in litigation, the opposing party would have had notice and a chance to participate in the "depositions," and the interviews would be public, not secret. Reply Brief of Appellant Thomas J. Ward at 5.[9] Information gathered *ex parte*, without notice or participation by the defendants, Ward maintains, cannot be used in a British court. Supplemental Brief of Appellant Thomas J. Ward at 11–13.

As already stated, we agree that section 1782 authorizes the gathering of evidence for use in judicial proceedings, not for use

geared solely to an anterior police investigation. The district court therefore inappropriately compared evidence-taking in satisfaction of the Letter to "a police investigation ... in this country." Recalling that the Letter seeks "statements in a form which is admissible in the English courts," Letter at 3, open proceedings with attendance by Ward and his counsel appear in order.[10] It is the norm, we believe, that parties involved in judicial proceedings are accorded notice and an opportunity to participate in the taking of evidence. Ward, however, cites no statutes, rules, cases, or other official pronouncements to support his claim that the procedures approved by the district court's order in this case violate British practices.

■ We decline to consider issues of British procedure in the first instance. Instead, we remand to the district court with instructions, failing agreement by the parties, to provide by order for the taking of evidence in a form appropriate "for use in a proceeding" in a British court. To so order, the district court should be aided by a submission from the Crown Prosecution Service describing the form appropriate for a British court, as distinguished from a police investigation. The district court should satisfy itself, by representations from the British authorities, that section 1782 is not being abused in this case.[11]

---

be discoverable in the foreign country before granting assistance."); *John Deere Ltd. v. Sperry Corp.,* 754 F.2d 132, 136 (3d Cir.1985) (addressing "[c]oncern that foreign discovery provisions not be circumvented by procedures authorized in American courts"); *see also infra* note 10.

**8.** The district court's discretion is of course subject to the U.S. Constitution. Furthermore, the statute preserves "any legally applicable privilege." 28 U.S.C. § 1782(a).

**9.** Counsel for Ward asserted in oral argument before the district court that the Crown Prosecution Service has no compulsory power over witnesses in Britain. Transcript at 35; *accord* Supplemental Brief of Appellant Thomas J. Ward at 15. The government replied that "this proceeding could have taken place in England exactly the way it is taking place here." Transcript at 40. The district court apparently credited the representations of the government. *See* Misc. No. 88–0028 (D.D.C. July 14, 1988) (order).

**10.** We do not imply that district courts should inquire into foreign rules regarding admissibility *per se.* Courts have rejected such an inquiry as a consideration in whether to grant assistance under § 1782. *See John Deere,* 754 F.2d at 136–38; *Tokyo,* 539 F.2d at 1219. We merely hold that the procedures cannot be inconsistent with the intent to use the evidence in judicial proceedings.

**11.** The district court did not abuse its discretion in rejecting Ward's plea for a protective order to guard against improper use of the evidence in auxiliary or unrelated proceedings here or abroad. The district court's order does not permit the Commissioners to do anything but send the evidence to the British prosecutors, Transcript at 23–24, and any other use by them would require court permission. *Id.* at 30; Brief for Appellees at 10–11. Should improper use of the evidence threaten injury to Ward in a future proceeding, he may assert a precise objection at the proper time and place. *See Donaldson,* 400 U.S. at 531, 91 S.Ct. at 542.

CONCLUSION

For the reasons stated, we affirm the district court's judgment in principal part. Proceedings in court need not be pending for a foreign prosecutor to obtain assistance as an "interested person" under section 1782. Court proceedings were within reasonable contemplation here, and the district court therefore properly denied Ward's motion to quash. We remand to the district court, however, for further proceedings consistent with this opinion, to ensure that the evidence is taken in a manner appropriate for use in judicial proceedings in the United Kingdom.

*It is so ordered.*