[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 25, 2012
JOHN LEY
CLERK

_____

No. 11-12897

_____

D.C. Docket No. 1:10-mc-22320-DLG


APPLICATION OF CONSORCIO ECUATORIANO DE
TELECOMUNICACIONES S.A.,
Pursuant to 28 USC 1782 for Judicial Assistance in
Obtaining Evidence From JAS Forwarding (USA), Inc.,
For Use In a Foreign Tribunal,

Plaintiff - Appellee,

versus

JAS FORWARDING (USA), INC.,

Defendant,

JET AIR SERVICE EQUADOR S.A.,

Intervenor - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(June 25, 2012)

Before MARCUS and BLACK, Circuit Judges, and HODGES,* District Judge.

MARCUS, Circuit Judge:

This appeal arises out of a foreign shipping contract billing dispute between Consorcio Ecuatoriano de Telecomunicaciones S.A. ("CONECEL") and Jet Air Service Equador S.A. ("JASE"). CONECEL filed an application in the Southern District of Florida under 28 U.S.C. § 1782 to obtain discovery for use in foreign proceedings in Ecuador. According to CONECEL, the foreign proceedings include both a pending arbitration brought by JASE against CONECEL for non-payment under the contract, and contemplated civil and private criminal suits CONECEL might bring against two of its former employees who, CONECEL claims, may have violated Ecuador's collusion laws in connection with processing and approving JASE's allegedly inflated invoices. CONECEL's application seeks discovery from JASE's United States counterpart, JAS Forwarding (USA), Inc. ("JAS USA"), which does business in Miami and was involved in the invoicing operations at issue in the dispute. The district court granted the application and authorized CONECEL to issue a subpoena. Thereafter, JASE intervened and moved to quash the subpoena and vacate the order granting the application. The

---

* Honorable Wm. Terrell Hodges, United States District Judge for the Middle District of Florida, sitting by designation.

district court denied the motion, as well as a subsequent motion for reconsideration. JASE now appeals the denial of both.

After thorough review and having had the benefit of oral argument, we affirm the orders of the district court. We hold that the arbitral tribunal before which JASE and CONECEL's dispute is now pending is a foreign tribunal for purposes of the statute. The arbitral panel acts as a first-instance decisionmaker; it permits the gathering and submission of evidence; it resolves the dispute; it issues a binding order; and its order is subject to judicial review. The discovery statute requires nothing more. We also hold that the district court did not abuse its considerable discretion in granting the section 1782 discovery application over JASE's objections that it would be forced to produce proprietary and confidential information. The application was narrowly tailored and primarily requested information concerning JASE's billing of CONECEL, which is undeniably at issue in the current dispute between the parties. Finally, the district court did not abuse its discretion in denying JASE's motion for reconsideration.

## I.

CONECEL and JASE have had a lengthy contractual relationship that

3

reaches back at least a decade.[1]  JASE agreed to provide transportation logistics services in connection with the international transportation of cell phones and accessories for CONECEL.  The contracts between the parties contain descriptions of the potential services to be provided by JASE and detailed terms pertaining to the rate to be charged per applicable unit of weight transported.  According to CONECEL, between 2002 and 2007 JASE invoiced, and CONECEL paid, more than $88 million for services rendered under the contracts.  The relationship between the parties soured in 2008, and CONECEL contends that an internal investigation and audit "using the limited documentation in its possession" revealed that CONECEL had been improperly overbilled by millions of dollars.

CONECEL says that the agreements between the parties provided that CONECEL would pay the rate specified by the agreements (in terms of dollars per unit of weight) multiplied by the weight of the shipment.  CONECEL contends that JASE introduced an "extra-contractual multiplication factor" into the equation, which "varied from shipment to shipment based on factors that are not known to CONECEL."[2]  CONECEL also claims that the calculation of the

_____

[1]  The agreements themselves are confidential and not part of the record.  The parties both describe in materially similar terms the overall contours of the agreements, however.

[2]  Specifically, CONECEL claims that JASE inflated the invoices in this way:

Stated mathematically, the process employed by JAS Ecuador looked like this: (gross

4

"chargeable weight" of the shipments was erroneous.

CONECEL reports that an internal investigation and audit has led it to believe that two of its former employees, Lucy Egas Ribadeneira ("Egas") and Germania Narváez ("Narváez"), had a hand in the overbilling scheme. The two former employees allegedly "participated in the processing and approval of JAS Ecuador's invoices during the relevant period and . . . there are indications that Ribadeneira and Narváez may be liable to CONECEL for its damages." CONECEL adds that its contemplated civil action for collusion would be filed in the civil-mercantile court of competent jurisdiction in Quito, Ecuador, and that under the applicable procedural rules, CONECEL must present all of the evidence necessary to support its claims at the moment it files the action. Then, if successful in a civil action, CONECEL could, under Ecuadorian law, pursue a private criminal action against its former employees. Since a party must present its evidence up front along with the pleadings, CONECEL seeks the discovery specified in section 1782 before commencing suit in Ecuador.

Not surprisingly, JASE tells a wholly different story. It claims that in 2008

---

weight or volumetric weight, whichever was higher) x (the extra-contractual multiplication factor) x (rate to be charged per the parties' agreement) = amount billed to CONECEL. The extra-contractual multiplication factor applied in this process was at the heart of the scheme which resulted in over-billing and damages to CONECEL.

CONECEL failed to pay several invoices. Pursuant to the contractual agreements between the parties, JASE has pursued arbitration in Ecuador before the Center for Arbitration and Conciliation of the Guayaquil Chamber of Commerce. CONECEL's primary defense in the pending arbitration proceeding is that the invoices do not correspond to the parties' agreed-upon price.

## II.

On July 14, 2010, CONECEL filed an ex parte application for judicial assistance in the Southern District of Florida in order to obtain evidence pursuant to 28 U.S.C. § 1782. Section 1782 provides in relevant part:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. … To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

28 U.S.C. § 1782(a).

CONECEL's detailed application, accompanied by two declarations and a

memorandum of law, sought evidence from JAS USA relating primarily to the

invoicing and calculation of rates charged to CONECEL.[3]  The application was

_____

   [3]  More specifically, CONECEL's application requested the following discovery from the relevant time period of January 1, 2002 up through and including December 31, 2008:

**I.**  **Document Production**

(a)  Any and all documents pertaining or relating to the rates charged or to be charged to CONECEL for any of JAS Ecuador's or its affiliates' services.

(b)  Any and all documents pertaining or relating to the procedure or methodology for applying the rates to be charged to CONECEL for any of JAS Ecuador's or its affiliates' services.

(c) Any and all documents pertaining or relating to the calculation of "gross weight" and "chargeable weight" for services provided by JAS Ecuador or its affiliates to CONECEL.

(d)  Any and all documents pertaining to Jet Air Service (Ecuador) S.A.'s billing or invoicing to CONECEL.

(e)  Any and all documents pertaining to JAS Ecuador Forwarding S.A.'s billing or invoicing to CONECEL.

(f)  Any and all documents pertaining or relating to Lucy Egas Ribadeneira.

(g)  Any and all documents pertaining or relating to Germania Narváez.

(h)  Any and all documents evidencing the actions of and services rendered by JAS USA in connection with shipments to CONECEL or via Jet Air Service (Ecuador) S.A., or JAS Ecuador Forwarding S.A., or JAS USA.

(i) Any and all documents pertaining to any audit, accounting, tabulation or investigation undertaken by JAS USA alone or in collaboration with any of its affiliates in relation to JAS Ecuador's claims in the Ecuadorian Arbitration Case or the actions of former CONECEL employees, Lucy Egas Ribadeneira and / or Germania Narváez.

**II.**  **Deposition(s)**

(a)  The sworn deposition of the JAS USA person (or persons) with most knowledge regarding:

also accompanied by a sample air waybill purporting to show that JAS USA's Miami office was involved in the provision and invoicing of transport services to CONECEL.

On July 20, 2010, the district court granted the ex parte application and authorized CONECEL to issue and serve a subpoena on JAS USA seeking the discovery outlined in CONECEL's application. JASE moved to intervene to vacate the order granting the application. After full briefing, the district court permitted the intervention but denied the motion to vacate.

The district court began its analysis by addressing the "primary disputed issue" of "whether the subpoenaed documents will be used in a proceeding [in] a foreign or international tribunal." The court observed that, as interpreted by the Supreme Court, section 1782 does not require that the foreign proceeding be pending or imminent, but rather only that the proceeding "be within reasonable contemplation." Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 259

---

1. The documents requested by CONECEL, including without limitation their authentication;

2. The services rendered to CONECEL by JAS Ecuador Forwarding S.A., Jet Air Service (Ecuador) S.A., JAS Ecuador, and/or JAS USA from January 1, 2002, up through and including, December 31, 2008.

8

(2004). The district court determined that CONECEL had "established that the civil and criminal actions are within reasonable contemplation." Having concluded that CONECEL's civil and criminal suits against its two former employees were within reasonable contemplation, the district court did not have to reach the question of whether the pending arbitration between JASE and CONECEL was a proceeding in a foreign tribunal under the statute. The court did observe, however, that "upon a review of the case law, the Court finds that the arbitral tribunal, in this action, is likely within the purview of section 1782."

Finally, as for JASE's argument that the application should have been denied anyway because CONECEL sought confidential materials, the district court rejected the claim this way:

> JAS Ecuador's primary discretionary argument is that the subpoena requests confidential materials. The Court disagrees. The subpoena simply requests information as it relates to how JAS Ecuador billed or invoiced CONECEL. It does not request information on how JAS Ecuador bills other clients. Indeed, it relates directly to the contract at issue -- the same contract JAS Ecuador uses to assert confidentiality. Accordingly, the Court finds this argument without merit.
>
> . . . [T]he Court does not find that JAS Ecuador is embarking on a "fishing expedition." The Court finds the Subpoena narrowly tailored and not unduly intrusive or burdensome. Accordingly, the motion to quash must be denied.

9

JASE moved for reconsideration; the district court denied the motion, concluding that it appeared to be nothing more than an effort to relitigate matters that the court had already decided. This timely appeal of both the order denying JASE's motion to vacate and the order denying JASE's motion for reconsideration followed.

**III.**

A district court's decision to honor or deny a section 1782 discovery request is reviewed for abuse of discretion. United Kingdom v. United States, 238 F.3d 1312, 1319 (11th Cir. 2001). This deferential standard is identical to the one we use when reviewing a district court's ordinary discovery rulings, including rulings such as whether the foundation for a claim of privilege has been established. Id. To the extent the district court's decision is based on an interpretation of law, however, our review is de novo. Id. at 1319 n.8. Thus, we review de novo the district court's interpretation of a federal statute like section 1782. In re Clerici, 481 F.3d 1324, 1331 (11th Cir. 2007). Finally, we review the district court's denial of a motion for reconsideration only for abuse of discretion. Richardson v. Johnson, 598 F.3d 734, 740 (11th Cir. 2010) (per curiam); Sanderlin v. Seminole Tribe of Fla., 243 F.3d 1282, 1285 (11th Cir. 2001).

Three issues are raised in this appeal: first, whether there is a "proceeding in

10

a foreign or international tribunal," 28 U.S.C. § 1782(a), for which CONECEL sought discovery; second, assuming the statutory requirements have been met, whether the district court nonetheless abused its discretion in granting the application because the disclosures would reveal confidential pricing information; and, third, whether the court abused its discretion in denying JASE's motion for reconsideration. We take each issue in turn. We emphasize, however, that this appeal is <u>not</u> about whether JASE actually overbilled CONECEL, with or without the collusion of CONECEL's former employees; or whether CONECEL owes JASE any money under the contracts between the parties; or, finally, whether any other underlying dispute among the parties and related persons has merit. Like the district court, we have no occasion to address any of these issues, which will likely be resolved in various tribunals in Ecuador.

**A.**

A district court has the authority to grant an application for judicial assistance under section 1782 if four statutory requirements are met:

> (1) the request must be made "by a foreign or international tribunal," or by "any interested person"; (2) the request must seek evidence, whether it be the "testimony or statement" of a person or the production of "a document or other thing"; (3) the evidence must be "for use in a proceeding in a foreign or international tribunal"; and (4) the person from whom discovery is sought must reside or be found in the district of

the district court ruling on the application for assistance.

In re Clerici, 481 F.3d at 1331-32 (footnote omitted) (quoting 28 U.S.C. § 1782(a)).  JASE does not dispute that requirements (1), (2), and (4) have been met here.  As a party to the dispute, CONECEL plainly is an "interested person"; CONECEL's application seeks evidence in the form of document production and deposition testimony; and the application seeks discovery from JAS USA, which has an office and does business in Miami and is therefore "found in the district of the district court ruling on the application for assistance" -- namely, the Southern District of Florida.

At issue is the third requirement -- that the evidence sought must be for use in a proceeding in a foreign or international tribunal.  JASE claims that there is no such proceeding.  CONECEL advances two independent theories for why there is: that the arbitration between the parties is a proceeding already pending in a foreign tribunal; and that CONECEL also wants the evidence for use in reasonably contemplated civil collusion proceedings that it may file against two of its former employees.  Because we now hold that the pending arbitration proceeding is a "proceeding in a foreign or international tribunal," 28 U.S.C. § 1782(a), we have no occasion to address the second theory.

Although an issue of first impression in this Circuit, the determination of

12

whether a foreign arbitration falls within the scope of section 1782 is guided in substantial measure by the Supreme Court's seminal decision in Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241 (2004). Most significantly for our purposes, the Court in Intel emphasized the breadth of the statutory term "tribunal." In discussing the legislative history of section 1782, Justice Ginsburg, writing for the Court, observed that Congress in 1964 introduced the word "tribunal" into the statute to replace the previous version's term "judicial proceeding," quoting with approval from a Senate Report "explain[ing] that Congress introduced the word 'tribunal' to ensure that 'assistance is not confined to proceedings before conventional courts,' but extends also to 'administrative and quasi-judicial proceedings.'" Id. at 248-49 (quoting S. Rep. No. 88-1580, at 7 (1964), reprinted in 1964 U.S.C.C.A.N. 3782, 3788). And then, in determining whether the Directorate-General for Competition of the European Commission was a "tribunal" under the statute, the Supreme Court reiterated that the legislative change from the phrase "any judicial proceeding" to the current phrase -- "a proceeding in a foreign or international tribunal" -- was intended to "provide the possibility of U.S. judicial assistance in connection with administrative and quasi-judicial proceedings abroad." Id. at 258 (alterations and internal quotation marks omitted). As the Supreme Court noted, "[w]hen Congress acts to amend a statute,

13

we presume it intends its amendment to have real and substantial effect." Id. at 258-59 (quoting Stone v. INS, 514 U.S. 386, 397 (1995)).

Moreover, the Court quoted with approval the following broad definition of "tribunal" set forth by a leading scholar on international procedure: "[t]he term 'tribunal' . . . includes investigating magistrates, administrative and arbitral tribunals, and quasi-judicial agencies, as well as conventional civil, commercial, criminal, and administrative courts." Id. at 258 (alterations in original) (emphasis added) (quoting Hans Smit, International Litigation Under the United States Code, 65 Colum. L. Rev. 1015, 1026 n.71 (1965)).[4]  Applying this broad definition to the case, the Supreme Court concluded that because the European Commission acted as a "proof-taking" body and a "first-instance decisionmaker," the Court had "no warrant to exclude the European Commission . . . from § 1782(a)'s ambit." Id. at 257-58; accord id. at 246-247 ("[T]he Commission is a § 1782(a) 'tribunal' when it acts as a first-instance decisionmaker . . . ."); id. at 255 & n.9 (noting that a European Commission proceeding "leads to a dispositive ruling, i.e., a final administrative action both responsive to the complaint and reviewable in court,"

---

[4]  Professor Smit, whose articles are repeatedly cited by the Supreme Court in Intel, is more than a leading scholar in the field.  Indeed, one of the reasons offered for citing his views as persuasive authority on the interpretation of section 1782 is that, as then-Judge Ginsburg explained in an earlier D.C. Circuit opinion, Professor Smit is "the dominant drafter of, and commentator on, the 1964 revision of 28 U.S.C. § 1782." In re Letter of Request from the Crown Prosecution Serv. of the U.K., 870 F.2d 686, 689 (D.C. Cir. 1989).

and observing that the European Commission has the "authority to determine liability and impose penalties, dispositions that will remain final unless overturned by the European courts").

Thus, while the Supreme Court in Intel was not tasked with specifically deciding whether a private arbitral tribunal falls under the statute, its broad functional construction of the term "tribunal" provides us with substantial guidance. Consistent with this functional approach, we examine the characteristics of the arbitral body at issue, in particular whether the arbitral panel acts as a first-instance adjudicative decisionmaker, whether it permits the gathering and submission of evidence, whether it has the authority to determine liability and impose penalties, and whether its decision is subject to judicial review. See id. at 255 & n.9, 257-58; see also In re Winning (HK) Shipping Co., 2010 WL 1796579, *7 (S.D. Fla. April 30, 2010) ("Intel suggests that courts should examine the nature of the arbitral body at issue to determine whether it functions as a 'foreign tribunal' for purposes of section 1782."); In re Roz Trading Ltd., 469 F. Supp. 2d 1221, 1228 (N.D. Ga. 2006) ("Where a body makes adjudicative decisions responsive to a complaint and reviewable in court, it falls within the widely accepted definition of 'tribunal,' the reasoning of Intel, and the

15

scope of § 1782(a) . . . .").[5]

The pending arbitration between JASE and CONECEL meets the functional criteria articulated in Intel. In connection with its section 1782 application, CONECEL submitted declarations from its Ecuadorian counsel explaining that the arbitral panel has the "authority to receive evidence, resolve the dispute, and award a binding decision." The declaration further states that after the conclusion of the arbitration proceedings,

> the parties will be able to appeal the decision before an ordinary court of the Ecuadorian state for causes related to procedural defects during the proceedings, for example, for the lack of service of the complaint to the defendant or lack of notification relating to some relevant decision that prevented one of the parties to exercise its defense rights, or a violation of the rules regarding designation of arbitrators or the selection of the tribunal, etc. The nullification action is resolved by the Provincial Court in the jurisdiction in which the arbitral award is rendered. Against the decision of the Provincial Court, an appeal can be made before the National Court of Justice.

The declaration also opined that "another possible option is to attack an arbitral

---

[5] Other district courts across the country largely have followed the interpretation of Intel set forth by the district court in Roz Trading. See In re Babcock Borsig AG, 583 F. Supp. 2d 233, 239 (D. Mass. 2008); In re Hallmark Capital Corp., 534 F. Supp. 2d 951, 954, 956 (D. Minn. 2007); see also Comisión Ejecutiva, Hidroeléctrica del Río Lempa v. Nejapa Power Co., 2008 WL 4809035, at *1 (D. Del. Oct. 14, 2008) (denying motion for reconsideration of order granting section 1782 application, noting that "the Supreme Court's decision in Intel (and post-Intel decisions from other district courts) indicate that Section 1782 does indeed apply to private foreign arbitrations").

award through an extraordinary action of protection provided for in the new Constitution of 2008." This kind of constitutional attack on the arbitral award is "made before the Constitutional Court," and the action would be viable if "a guaranteed right under the Constitution has been violated, whether by act or omission."

Notably, JASE does not contest that the arbitral tribunal at issue is a first-instance decisionmaking body that can receive evidence and bind the parties with its ruling; it only contests whether the arbitral tribunal's decision is subject to judicial review. JASE submitted in the district court its own declaration from Ecuadorian counsel stating only that "[t]he sum and substance of [arbitrators'] rulings, including determinations of fact and law are not reviewable by appeal."[6]

The parties' declarations are in no way inconsistent. JASE's declaration does not dispute that the award of the arbitral panel is subject to nullification

---

[6] The relevant paragraph of the declaration provides in full:

It should further be noted that the subject arbitration is a private arbitration proceeding initiated due to a contractual agreement, mutually negotiated, whereby the commercial parties thereto chose to deprive the Court system of jurisdiction with respect to any disputes arising under the Agreement. In this manner, it is commonplace between large corporations to resolve commercial matters outside the scope of the judiciary. Arbitrations in Ecuador, while sanctioned and afforded the most basic constitutional protections, are not conducted by Judges, but by private citizens, typically attorneys, who issue their decisions. The sum and substance of the rulings, including determinations of fact and law are not reviewable by appeal.

17

based on procedural defects in the arbitration proceeding and to constitutional attack if the constitutional rights of one of the parties has been violated. The opposing declarations read together demonstrate that judicial review of arbitration awards in Ecuador, much like a federal court's review of an arbitration award, is focused primarily on addressing defects in the arbitration proceeding, not on providing a second bite at the substantive apple that would defeat the purpose of electing to pursue arbitration in the first instance. Cf. 9 U.S.C. § 10(a) (providing that a district court may vacate an arbitration award where the award was procured by corruption or fraud, where the arbitrators were partial or corrupt, where misbehavior by the arbitrators prejudiced the rights of any party, or where the arbitrators exceeded their powers); Hall St. Assocs., L.L.C. v. Mattel, Inc., 552 U.S. 576, 578 (2008) (holding that "the statutory grounds" for judicial review in the Federal Arbitration Act "are exclusive," and may not be supplemented by contract); White Springs Agric. Chems., Inc. v. Glawson Invs. Corp., 660 F.3d 1277, 1280 (11th Cir. 2011) ("Because these Sections [9 U.S.C. §§ 10-11] are the exclusive means for upsetting an arbitration award, a panel's incorrect legal conclusion is not grounds for vacating or modifying the award.").

One could not seriously argue that, because domestic arbitration awards are only reviewable in court for limited reasons (notably excluding a second look at

18

the substance of the arbitral determination), this amounts to no judicial review at all. As the Supreme Court has expressly recognized, the Federal Arbitration Act provides the exclusive statutory grounds for "expedited judicial review." Hall St., 552 U.S. at 578 (emphasis added). Yet JASE urges us, for section 1782 purposes, to conclude that the functional requirement of being subject to judicial review is only satisfied when the sum and substance of the arbitral body's decision is subject to full judicial reconsideration on the merits. This definition is far too stringent, and we can discern no sound reason to depart from the common sense understanding that an arbitral award is subject to judicial review when a court can enforce the award or can upset it on the basis of defects in the arbitration proceeding or in other limited circumstances. Based on the undisputed record before this Court, the arbitral panel in Ecuador, after receiving evidence from the parties, will render a first-instance binding decision on the merits that is subject to judicial review. This arbitral panel is, in the words of the Supreme Court, "a first-instance decisionmaker" whose judgment is subject to judicial review, and we therefore "have no warrant to exclude [it] . . . from § 1782(a)'s ambit." Intel, 542 U.S. at 258.[7] In short, CONECEL's

_____

[7] We are aware that two of our sister circuits, prior to the Supreme Court's decision in Intel, had reached a different conclusion, holding that private arbitral tribunals fall outside of section 1782's scope because the statute was only "intended to cover governmental or

application satisfied the prima facie requirements of 28 U.S.C. § 1782(a).

intergovernmental arbitral tribunals and conventional courts and other state-sponsored adjudicatory bodies." Nat'l Broad. Co. v. Bear Stearns & Co., 165 F.3d 184, 190 (2d Cir. 1999); accord Republic of Kazakhstan v. Biedermann Int'l, 168 F.3d 880, 881 (5th Cir. 1999). Most notably for our purposes, these decisions, and the categorical distinction they drew between governmental and private tribunals, were rendered without the benefit of the Supreme Court's subsequent Intel decision, in which the Court set forth a far broader and wholly functional definition of the term "tribunal," and declined to impose "categorical limitations" on the scope of section 1782(a). Intel, 542 U.S. at 255; see also Roz Trading, 469 F. Supp. 2d at 1228. To the extent that JASE relies here on a categorical distinction between governmental and private arbitral tribunals, we are unpersuaded, because neither the text of the statute nor the Supreme Court's decision in Intel make, or even suggest, drawing any such distinction. As the Supreme Court explained, Congress in 1964 replaced the term "judicial proceeding" with the term "tribunal" precisely in order to broaden the reach of section 1782 and extend the authority of district courts to provide assistance in connection with quasi-judicial proceedings abroad. Intel, 542 U.S. at 258. And the view that the statutory term "tribunal" includes "arbitral tribunals," strongly endorsed by the Supreme Court, albeit in dicta, see id., was not qualified in any way or limited only to governmental arbitral tribunals. Indeed, we note that Professor Smit has also written that "[c]learly, private arbitral tribunals come within the term the drafters used" and that "the term 'tribunal' in Section 1782 includes an arbitral tribunal created by private agreement." Hans Smit, American Assistance to Litigation in Foreign and International Tribunals: Section 1782 of Title 28 of the U.S.C. Revisited, 25 Syracuse J. Int'l L. & Com. 1, 5-6 (1998).

Moreover, the Intel decision also made clear that a district court, in the exercise of its sound discretion, may consider a number of the concerns that animated the decisions of the Second and Fifth Circuits, such as the claim that application of section 1782 to private arbitration is at odds with the limited scope of discovery and streamlined procedures that lead parties to elect to pursue arbitration in the first place. See Kazakhstan, 168 F.3d at 883; Nat'l Broad. Co., 165 F.3d at 190-91. Thus, for example, the Fifth Circuit reasoned that "arbitration's principal advantages may be destroyed if the parties succumb to fighting over burdensome discovery requests far from the place of arbitration." Kazakhstan, 168 F.3d at 883. This concern is real, but we recognize that the district court is in the best position to weigh the section 1782 applicant's asserted need for the evidence against the nature of the foreign proceeding and concerns of undue burden or intrusiveness -- two factors that the Supreme Court expressly instructed district courts to consider in determining whether to grant a section 1782 application. Intel, 542 U.S. at 264-65; accord id. at 264 ("[T]he grounds Intel urged for categorical limitations on § 1782(a)'s scope may be relevant in determining whether a discovery order should be granted in a particular case."); In re Winning, 2010 WL 1796579, at *10 n.5 ("[The party resisting discovery] correctly asserts that the broadened definition of 'international tribunal' by the Supreme Court in Intel may result in additional discovery burdens that parties to private arbitration seek to avoid. However, because courts may modify discovery requests based upon the discretionary factors set forth in Intel, such burdens may be significantly curtailed by a court, and thus allow parties to still reap the benefits of private arbitration.").

**B.**

Our inquiry does not end with the statutory requirements. The law is clear that "a district court is not required to grant a § 1782(a) discovery application simply because it has the authority to do so." Intel, 542 U.S. at 264 (citing United Kingdom, 238 F.3d at 1319). Thus, JASE argues that, even if the statutory requirements have been met, the district court abused its discretion in granting CONECEL's application anyway.

Section 1782 is the product of over 150 years of congressional effort to provide federal-court assistance in gathering evidence for use in foreign tribunals. See id. at 247-49 (reviewing at some length the history of congressional efforts to provide judicial assistance to foreign tribunals and developments designed to broaden the scope of federal courts' power to respond to foreign or international discovery requests). "The history of Section 1782 reveals Congress' wish to strengthen the power of district courts to respond to requests for international assistance." Lo Ka Chun v. Lo To, 858 F.2d 1564, 1565 (11th Cir. 1988). Accordingly, as we have said, "[w]hether, and to what extent, to honor a request for assistance pursuant to § 1782 has been committed by Congress to the sound discretion of the district court" and "this court may overturn the district court's decision only for abuse of discretion." United Kingdom, 238 F.3d at 1318-19.

21

We have further made clear that "[t]his deferential standard is identical to that used in reviewing the district court's ordinary discovery rulings." Id. at 1319; cf. Harris v. Chapman, 97 F.3d 499, 506 (11th Cir. 1996) ("District judges are accorded wide discretion in ruling upon discovery motions, and appellate review is accordingly deferential.").

Interpreting the Supreme Court's decision in Intel, a panel of this Court already has spelled out four factors that should be considered by the district court in exercising its discretion:

> Once the prima facie requirements are satisfied, the Supreme Court in Intel noted these factors to be considered in exercising the discretion granted under § 1782(a): (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding," because "the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the request is otherwise "unduly intrusive or burdensome." The Supreme Court in Intel added that "unduly intrusive or burdensome requests may be rejected or trimmed."

In re Clerici, 481 F.3d at 1334 (citation omitted) (quoting Intel, 542 U.S. at 264-65). JASE's argument that the district court abused its discretion only focuses on

22

the fourth factor. JASE claims that CONECEL's request for discovery from JAS USA is overbroad and improperly seeks confidential and proprietary information related to how both JAS USA and JASE price their services.

The main problem with JASE's claim is that it fails to provide us with any sound basis for overturning the district court's exercise of discretion or for upending the district court's determination that the discovery request was narrowly tailored. This Circuit has held that once the section 1782 factors are met and the district court is therefore authorized to grant the application, "the federal discovery rules, Fed. R. Civ. P. 26-36, contain the relevant practices and procedures for the taking of testimony and the production of documents." Weber v. Finker, 554 F.3d 1379, 1384-85 (11th Cir. 2009) (quoting In re Clerici, 481 F.3d at 1336). As we explained in Weber:

> Section 1782 does not require that every document discovered be actually used in the foreign proceeding. Quite the opposite. Section 1782 expressly provides that the district court should grant discovery under the Federal Rules of Civil Procedure. Pursuant to Rule 26(b)(1) of the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense -- including the existence, description, nature, custody, condition, and location of any documents . . . ." Fed. R. Civ. P. 26(b)(1).

Id. at 1385.

CONECEL's discovery requests in the instant section 1782 application were

23

undeniably relevant to CONECEL's defense in the pending arbitration. CONECEL's defense in the arbitration is based on establishing that JASE overbilled in violation of the contractual arrangement between the parties. Evidence in JAS USA's possession relating to, for example, "the rates charged or to be charged to CONECEL" or "the procedure or methodology for applying the rates to be charged to CONECEL" is plainly relevant to this defense. Moreover, we find unpersuasive JASE's unsubstantiated claim that JAS USA's compliance with the subpoena would require the disclosure of confidential pricing information that would harm its competitiveness in the marketplace. On its face, CONECEL's application does not seek general price information from JASE or JAS USA or information about how JASE or JAS USA bills any other clients besides CONECEL. Rather, every request in the application that bears on pricing information uses language limiting the request to information relating directly to CONECEL, such as "the rates charged or to be charged to CONECEL," or "services provided by JAS Ecuador or its affiliates to CONECEL," or "billing or invoicing to CONECEL," or "services rendered . . . in connection with shipments to CONECEL." The district court did not abuse its discretion in concluding that the subpoena requests information that "relates directly to the contract at issue" and was "narrowly tailored."

Moreover, JASE does not appear to have taken any steps to meet CONECEL somewhere in the middle or to narrow the discovery request in any particular way; rather, it has taken an all-or-nothing approach seeking to remove JAS USA from the burden of having to produce <u>any</u> documents or deposition testimony, even those that seem unambiguously relevant. We have previously recognized that such an approach is problematic:

> Finally, as to the fourth <u>Intel</u> factor -- whether the § 1782 request is unduly intrusive -- the district court's order granting the § 1782 application specifically indicated that if Clerici wished to pursue his "unduly intrusive" argument, Clerici should file a motion to limit discovery. Clerici never did so and instead chose to appeal the grant of <u>any</u> discovery whatsoever. On appeal, as in the district court, Clerici does not identify the terms of the written request that are overly broad or assert how the scope of the request should be narrowed. Thus, we, like the district court, have no occasion to address the scope of the Panamanian Court's discovery request.

<u>In re Clerici</u>, 481 F.3d at 1335.[8]

The Seventh Circuit has raised similar concerns about all-or-nothing discovery challenges in the course of reversing a district court's complete denial of a section 1782 application as an abuse of discretion:

---

[8] Although the district court in this case did not expressly invite subsequent motions to limit discovery, the basic concern raised by the panel in <u>In re Clerici</u> remains: it is a tall order indeed for a party resisting a section 1782 application to establish on appeal that the district court abused its broad discretion in granting any discovery at all.

Heraeus's discovery demands are broad . . . . For all we know, they are too broad. But if so, it doesn't follow that Heraeus is not entitled to <u>any</u> discovery. It's not as if its demands were frivolous; it obviously needs a good deal of discovery in order to prepare its case against Biomet. If it's asking for too much, the district court can and should cut down its request, but not to nothing, as it did. That was unreasonable, and therefore reversible.

<u>Heraeus Kulzer, GmbH v. Biomet, Inc.</u>, 633 F.3d 591, 597-98 (7th Cir. 2011); <u>see also</u> <u>id.</u> at 598 (noting that the district court's denial of any discovery "was all the more unreasonable because Biomet had refused to meet with Heraeus to negotiate a reduction in the amount of discovery sought" and because of Biomet's "refusal to present any evidence of the burdens that granting Heraeus's discovery request would impose"). These concerns are persuasive. In this case, JASE has failed to identify which particular discovery requests in CONECEL's application are unduly burdensome or to provide any specific evidence to support its blanket claim that JAS USA should be exempted from having to comply with any and all discovery obligations due to overarching concerns about confidentiality that are stated only at the highest order of abstraction.

Finally, JASE suggests that the district court erred because its order denying the motion to vacate did not contain a sufficiently detailed analysis of JASE's arguments about confidential price information. This argument too is without

26

merit. The district court considered the motions and pertinent parts of the record, correctly identified the four Intel factors that guide the exercise of its discretion, correctly observed that JASE objected to the production of purportedly confidential pricing information, and then made the determination that it "disagree[d]" with JASE's confidentiality claim and further found "the Subpoena narrowly tailored and not unduly intrusive or burdensome." We can discern no abuse of discretion in any of these findings.

### C.

JASE's final claim is that the district court erred in denying its motion for reconsideration under Fed. R. Civ. P. 59 and 60.[9] Although not a model of clarity, JASE's motion, beyond merely reiterating JASE's previously raised claims, appeared to seek relief in large part under Fed. R. Civ. P. 60(b)(2), which permits relief from a final judgment, order, or proceeding based on "newly discovered evidence." In this Circuit, we employ a five-part test that a movant must meet in order to be entitled to such relief:

---

[9] No one disputes that Rules 59 and 60 are appropriate vehicles to seek reconsideration of a district court's order denying a motion to vacate, because the order denying the motion to vacate is final and leaves nothing further pending before the district court, much like any other form of final judgment. Cf. Heraeus Kulzer, 633 F.3d at 593 (holding that a district court order denying a section 1782 application was final and appealable because "[t]he court is finished with the matter -- as the only matter is discovery -- and when no further proceedings are contemplated, the court's last order, even if it is a discovery order, is an appealable final order.").

27

(1) the evidence must be newly discovered since the trial [or final judgment or order]; (2) due diligence on the part of the movant to discover the new evidence must be shown; (3) the evidence must not be merely cumulative or impeaching; (4) the evidence must be material; and (5) the evidence must be such that a new trial [or reconsideration of the final judgment or order] would probably produce a new result.

Waddell v. Hendry Cnty. Sheriff's Office, 329 F.3d 1300, 1309 (11th Cir. 2003) (citing Toole v. Baxter Healthcare Corp., 235 F.3d 1307, 1316 (11th Cir. 2000)).

The newly discovered evidence that JASE brought to the district court's attention was an April 2011 action filed in Ecuador by Egas, one of the two former CONECEL employees discussed in the section 1782 application. Egas's suit seeks damages from CONECEL for slander based on CONECEL's allegations of her wrongdoing in this section 1782 application. JASE met the first three factors of the Waddell analysis because the evidence was new, discovered with due diligence, and not cumulative. The district court order denying JASE's initial motion to vacate the order granting the section 1782 application was issued in April 2011, the same month that Egas commenced her lawsuit in Ecuador. JASE promptly brought the new evidence to the attention of the district court by filing a timely motion for reconsideration in May 2011.

But JASE's evidence falls short under the fourth and fifth Waddell factors. JASE claims that Egas's suit establishes that any potential civil action by

28

CONECEL against its former employees would be baseless and without merit, thereby confirming that there were no reasonably contemplated proceedings and that CONECEL's section 1782 application was merely a fishing expedition designed to harass JASE and JAS USA. But we cannot simply assume that the allegations in Egas's lawsuit are true and the allegations in CONECEL's section 1782 application are false. Like the district court, we are in no position to assess the merits of either CONECEL's potential suit against Egas or Egas's retaliatory suit for slander. More importantly, the Egas lawsuit has no bearing on our holding that the pending arbitration between JASE and CONECEL satisfies the requirements of section 1782. Evidence of Egas's slander lawsuit is immaterial to the outcome of this case.

In short, JASE's newly discovered evidence proffered in its motion for reconsideration was not material evidence nor evidence that would have probably changed the outcome of the district court's decision. See Waddell, 329 F.3d at 1309. Indeed, the bulk of JASE's motion for reconsideration just reiterated JASE's already-rejected arguments. The district court, therefore, acted entirely within its sound discretion in denying JASE's motion for reconsideration. See Richardson, 598 F.3d at 740 ("A motion for reconsideration cannot be used 'to relitigate old matters, raise argument or present evidence that could have been

raised prior to the entry of judgment.'" (quoting <u>Michael Linet, Inc. v. Vill. of</u>

<u>Wellington</u>, 408 F.3d 757, 763 (11th Cir. 2005))).

The district court's denial of JASE's motion to vacate the order granting

CONECEL's 28 U.S.C. § 1782 application and the denial of JASE's motion for

reconsideration are **AFFIRMED**.

BLACK, Circuit Judge, specially concurring:

I concur in the judgment affirming the district court. I would affirm the district court, however, on the basis of CONECEL's second theory for why the evidence it seeks is for use in a "proceeding in a foreign or international tribunal" under § 1782. *See* Opinion at 12.

Section 1782(a) does not limit the provision of judicial assistance to "pending" or "imminent" adjudicative proceedings. *Intel Corp.*, 542 U.S. at 259 (rejecting the view that a proceeding must be "very likely to occur and very soon to occur"). The statute requires only that an adjudicative proceeding be "within reasonable contemplation." *Id.*

I conclude the record supports the district court's determination that CONECEL's potential litigation against Egas and Narváez was "within reasonable contemplation."