[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-12558
Non-Argument Calendar

_____

D.C. Docket No. 1:12-cv-00411-JOF

RONALD L. CARAWAY,
WILLIAM T. CLIATT,
JOHN W. DENNIS,
PAUL A. DIFFENDERFER,
JERRY DREADON,
DARRELL L. DUDLEY,
JOEL L. FORREST,
HAROLD R. GAUSMAN,
STEPHEN C. HARLESS,
BILLY JOYCE,
STEVEN W. KIMSEY,
STEVEN M. MCCOLLUM,
TILTON C. MEUNINCK,
FRANCES A. MULKEY,
ALAN B. NESBITT,
THOMAS W. ROBERTS,
BRADLEY G. ROBINSON,
DAVID E. STENNER,
KENNETH STEPP,
JOHN R. STIERS,
JEFFREY F. VAN HUSS,
CHESTER VILE,
DENNIS ZONDERVAN,

Plaintiffs-Appellants,

versus

SECRETARY, U.S. DEPARTMENT OF TRANSPORTATION,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(December 16, 2013)

Before HULL, WILSON and FAY, Circuit Judges.

PER CURIAM:

The plaintiffs-appellants, retired air traffic control specialists, appeal the district court's dismissal of their amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for relief. The plaintiffs were previously employed by the Federal Aviation Administration ("FAA") and brought claims under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623(a), against defendant-appellee the United States Secretary of Transportation in his official capacity (the "Secretary"). The plaintiffs also appeal the district court's denial of their motion to reconsider its Rule 12(b)(6) dismissal. After careful review, we affirm as to all issues.

## I.  FACTS AND PROCEDURAL HISTORY

We first recount the facts as alleged in the plaintiffs' amended complaint.[1] During the period from October 2002 until October 2004, each plaintiff worked as an "air traffic control specialist" at the Atlanta Control Tower/Tracon facility (the "Atlanta Control Tower") at the Hartsfield-Jackson International Airport in Atlanta, Georgia. Twenty-two of the plaintiffs were "supervisory air traffic control specialists" and one plaintiff was a "non-supervisory air traffic control specialist" during the relevant period.

In October 2002, due to an increase in air traffic into and out of Hartsfield-Jackson, the Atlanta Control Tower qualified for an upgrade in its facility status from the FAA. This upgrade would have resulted in pay increases for both supervisory and non-supervisory air traffic control specialists. For reasons unstated in the amended complaint, the FAA decided not to upgrade the facility at that time. Instead, in 2004, the FAA reorganized the Atlanta Control Tower's operations by dividing it into two separate facilities, resulting in reduced reported traffic counts for each facility.

Alleging that the FAA's failure to upgrade the Atlanta Control Tower (and resulting failure to give pay increases to employees) violated a collectively bargained agreement, the National Air Traffic Controllers Association, the union representing the non-supervisory air traffic control specialists, filed a grievance against the FAA on March 9, 2004. In January 2011, the FAA settled with the union. The FAA agreed to

---

[1]We also draw our account of the facts from a document attached to the Secretary's motion to dismiss, because, as the district court determined, the document was central to the claims at issue and its authenticity was not disputed.

3

provide backpay to all non-supervisory air traffic control specialists (the members of the union which had filed the grievance) for the period from 2002 (when the Atlanta Control Tower became eligible for an upgrade) until 2004 (when the FAA divided the Tower into separate facilities, making it no longer eligible for the upgrade).  The settlement did not provide for backpay for supervisory air traffic control specialists who had worked at the Atlanta Control Tower during this period, but who were not union members.    The FAA modified its backpay decision in March 2011.  At that time, it agreed to also give backpay to all air traffic control specialists who had worked at the Atlanta Control Tower during the relevant period, regardless of whether the employee was or was not a supervisor, and regardless of whether the employee presently worked for the FAA.

According to the amended complaint, the FAA then changed positions again, and, in April 2011, decided to exclude from the backpay award one category of employee: supervisory air traffic control specialists who worked at the Atlanta Control Tower during the relevant period of 2002 to 2004 but who did not presently in 2011 work for the FAA because they had already retired.  The plaintiffs here were excluded from the backpay award, as all but one of the plaintiffs had been a supervisory air traffic control specialist during the relevant period, and all were not currently working for the FAA as they had retired before the 2011 decision.[2]  In total,

_____

[2]According to the amended complaint, the FAA decided to exclude from the backpay award only supervisory air traffic control specialists.  Nevertheless, the amended complaint also alleged that plaintiff Steven W. Kimsey was a non-supervisory air traffic control specialist who still did not

4

the FAA paid backpay to approximately 191 of the 214 air traffic control specialists who worked at the Atlanta Control Tower between 2002 and 2004 and the plaintiffs here were the only ones excluded from the award.

Believing that the decision to exclude them from the backpay award resulted from age discrimination, on October 19, 2011, the plaintiffs filed with the EEOC a Notice of Intent to Sue under 29 C.F.R. § 1614.201(a).[3]  Thereafter, on February 8, 2012, the plaintiffs filed their original complaint.  After the Secretary filed a motion to dismiss, the district court granted the plaintiffs leave to file an amended complaint.

In the plaintiffs' amended complaint, they asserted 23 individual ADEA claims of age discrimination based on disparate treatment.  The plaintiffs' amended complaint alleged that the plaintiffs were "identical in all respects to the employees paid [backpay], i.e., they worked at the ATC facility during 2002-2004."

The plaintiffs appeared to make two unsuccessful attempts to allege valid, similarly situated comparators who received backpay.  The amended complaint first gave the names and ages of six <u>supervisory</u> air traffic control specialists "who received the back pay payment [and] who were substantially younger than the Plaintiffs."  However, the amended complaint also alleged that the only supervisors

receive backpay.  We accept the facts alleged in the amended complaint as true, but note this discrepancy.

[3]This provision provides that "an aggrieved individual may file a civil action in a United States district court under the ADEA against the head of an alleged discriminating agency after giving the [Equal Opportunity Employment] Commission not less than 30 days' notice of the intent to file such an action."  29 C.F.R. § 1614.201(a).

who did not get backpay in 2011 were those who had retired by then. Thus, the amended complaint itself showed that these six alleged comparators were still working for the FAA in 2011 (which means the six were not similar to the plaintiffs who were no longer working for the FAA by that time).

The amended complaint also alleged that the FAA "paid [backpay to] employees who no longer worked at the facility" and "paid employees who have retired and or resigned." However, the amended complaint's other allegations showed that the retired or otherwise separated employees who received backpay were non-supervisory air traffic control specialists. Unlike the plaintiffs, a union collectively bargained on behalf of these retired, non-supervisory employees.

As relief, the plaintiffs requested, inter alia, "[p]ayment for compensation equal to the back pay wages paid to their co-workers for service during the years 2002-2004."

The Secretary filed a motion to dismiss, arguing that the amended complaint failed to state a claim upon which relief could be granted because the ADEA claims failed to identify similarly situated comparators who were not subjected to discrimination. The district court agreed with the Secretary and dismissed the amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim.

The district court pointed out that "[a]ll that is alleged in Plaintiffs' Amended Complaint is their bald contention that when the Federal Aviation Administration

6

decided in April 2011 that it would not pay supervisory air traffic controllers back pay if they had retired from service before 2011, this change was a product of age discrimination" and that there was "no factual support at all . . . to support this conclusory allegation." The facts in the amended complaint did not give rise to "any plausible inference of age discrimination," according to the district court, because there are a myriad of reasons why an employer would determine that only those supervisors currently in service would be eligible for backpay payments.

Thereafter, the plaintiffs filed a motion for reconsideration, asking the district court to reconsider its dismissal in light of newly acquired evidence obtained from the FAA through a Freedom of Information Act ("FOIA") request. The plaintiffs argued that this new evidence showed that the retired, non-supervisory air traffic control specialists who received backpay were similarly situated comparators and could be used to establish the plaintiffs' disparate treatment ADEA claims.

The new evidence included, inter alia: (1) a copy of the 2011 settlement agreement between the FAA and the union, showing that the union members (non-supervisory air traffic control specialists) received backpay regardless of whether they had retired from the FAA by 2011; (2) a copy of a 2011 letter from a senior FAA official stating that the FAA would pay backpay to "current management employees who were active at Atlanta Tower/TRACON at the time the grievance was filed" because the FAA "strives to provide managers at facilities the same treatment as bargaining unit employees"; (3) a list of all supervisory air traffic control specialists

7

who received backpay awards and the amounts of those awards; and a declaration from one of the plaintiffs, Billy Joyce, providing, based on his own personal knowledge, a list of retired non-supervisory air traffic control specialists who received backpay awards under the 2011 settlement.

The plaintiffs argued that this evidence showed: (1) that non-supervisory employees who no longer worked at the FAA in 2011 had been paid backpay; (2) that the FAA had an internal policy of treating similarly non-supervisory and supervisory employees; (3) the FAA had "departed from its policy" by paying backpay to only the supervisory employees who were current employees in 2011, while paying backpay to all non-supervisory employees who worked for the FAA between 2002 and 2004, regardless of the non-supervisory employee's status in 2011; and (4) the fact that the FAA had departed from its own policy when it had denied the plaintiffs backpay suggested discrimination. Further, the plaintiffs argued that, in light of the FAA's policy of treating alike supervisory and non-supervisory employees, the non-supervisory employees who received backpay despite not working for the FAA in 2011 were valid comparators, similarly situated to the plaintiffs.

The district court denied the plaintiffs' motion for reconsideration, stating that "[n]one of the[] documents . . . has anything to do with discrimination on the basis of age and therefore do not warrant a reconsideration of the court's prior order."

The plaintiffs appealed the district court's order granting the motion to dismiss, and the order denying the motion for reconsideration.

8

## II.  DISCUSSION

### A.    Principles of Age Discrimination Under the ADEA

We first address the district court's determination that the plaintiffs did not state ADEA claims upon which relief could be granted.[4]  The ADEA makes it unlawful for an employer to discriminate against employees over age 40 on the basis of age.  29 U.S.C. §§ 623(a), 631; see Turlington v. Atlanta Gas Light Co., 135 F.3d 1428, 1432 (11th Cir. 1998).  "A plaintiff can establish age discrimination through either direct or circumstantial evidence."  Sims v. MVM, Inc., 704 F.3d 1327, 1332 (11th Cir. 2013).  Where, as here, a plaintiff sought to prove age discrimination through only circumstantial evidence, this Court employs the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817 (1973).  See Chapman v. A1 Transp., 229 F.3d 1012, 1024 (11th Cir. 2000) (en banc).

Under this framework, a plaintiff has the initial burden of establishing a prima facie case of age discrimination by showing that: (1) he was within the statute's protected class; (2) he was qualified for his position; (3) he was subjected to adverse employment action; and (4) he suffered from disparate treatment because of membership in the protected class.  Kelliher v. Veneman, 313 F.3d 1270, 1275 (11th Cir. 2002).  Once the plaintiff establishes a prima facie case, the burden shifts to the

---

[4]We review de novo a district court's dismissal under Rule 12(b)(6), accepting as true the allegations in the complaint and construing them in the light most favorable to the non-moving party. Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003).

9

employer to articulate a legitimate, nondiscriminatory reason for its action, and, if the employer succeeds, the burden returns to the plaintiff to demonstrate that the employer's reasons are pretextual.  Sims, 704 F.3d at 1332.

To establish the disparate treatment element of the prima facie case, a plaintiff may point to a similarly situated comparator who was not discriminated against. Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1091 (11th Cir. 2004).  To establish disparate treatment in this way, "[t]he comparator must be nearly identical to the plaintiff to prevent courts from second-guessing a reasonable decision by the employer."  Id.

## B.    The Rule 12(b)(6) Dismissal

The allegations in the plaintiffs' amended complaint did not establish a prima facie case of age discrimination.  The amended complaint asserted, as to each plaintiff that "similarly situated, substantially younger co-workers were treated more favorably."  Specifically, it appeared to divide those co-workers into two categories as comparators: (1) supervisory employees who were still employed by the FAA in 2011 and who received backpay; and (2) non-supervisory employees who had retired or separated for other reasons and thus were no longer employed by the FAA in 2011 and who received backpay.

Neither type of employee was actually similarly situated to the plaintiffs, however.  As for the first category, the fact that those supervisory employees worked for the FAA at the time of the award, whereas the plaintiffs did not was the crucial

10

difference.  We have previously held that "[i]n a comparator analysis, the plaintiff is matched with a person or persons who have very similar job-related characteristics and who in a similar situation to determine if the plaintiff has been treated differently than others who are similar to him."  MacPherson v. Univ. of Montevallo, 922 F.2d 766, 774 n.16 (11th Cir. 1991).  Even assuming that the supervisory employees who received backpay had "very similar job-related characteristics" as the plaintiffs between 2002 and 2004, they were not "in a similar situation" as the plaintiffs when the alleged discriminatory action occurred.  See id.  Specifically, these other supervisory employees still worked for the FAA, while the plaintiffs did not.  Thus, they could not serve as comparators to establish the plaintiffs' ADA disparate treatment claims.

As for the second category, the difference was that the retired employees who received backpay were non-supervisory employees represented by a union, whereas the plaintiffs were supervisory, non-unionized, retired employees.  First, the amended complaint does not allege that the "job-related characteristics" of the non-supervisory employees were "very similar" to those of the supervisory employees.  See id.  Second, the non-supervisory employees were not in a "similar situation" as the supervisory employees because they were represented by a union, whereas the supervisory employees were not.  See id.   Third, the settlement agreement between the FAA and the union showed that it was the union which was responsible for

11

determining which employees would receive backpay, not the FAA.[5]  As we have

held, "differences in treatment by different . . . decision makers can seldom be the

basis for a viable claim of discrimination."  Silvera v. Orange Cnty. Sch. Bd., 244

F.3d 1253, 1261 n.5 (11th Cir. 2001).  Because it was the union that decided to give

backpay to the non-supervisory employees no longer working for the FAA in 2011,

and the FAA that decided to withhold backpay from the supervisory employees who

had left the FAA by that time, the differences in treatment of the two groups did not

support a claim of discrimination.

Given that the amended complaint did not specifically allege the existence of a

valid comparator or otherwise allege facts giving rise to an inference of disparate

treatment, the plaintiffs failed to allege a valid ADEA claim.  See Davis v. Coca-Cola

Bottling Co., 516 F.3d 955, 974 (11th Cir. 2008) (rejecting plaintiffs' Title VII claims

of race discrimination where the complaint alleged only that "plaintiffs were . . .

treated differently than similarly situated white employees solely because of race"

(internal quotation marks and alterations omitted)).  Accordingly, the district court did

not err in granting the Secretary's motion to dismiss.

## C.    The Denial of the Motion for Reconsideration

Next, we turn to the plaintiffs' appeal of the district court's denial of their

motion for reconsideration.  Because the plaintiffs filed the motion for reconsideration

---

[5]We note that the copy of the settlement agreement was not in the record at the time the district court ruled on the motion to dismiss.  However, we consider the document here, as it was both central to the complaint and its authenticity was never disputed.  Cf. Harris v. Ivax Corp., 182 F.3d 799, 802 n.2 (11th Cir. 1999).

within 28 days of the district court's dismissal order, and because the plaintiffs' motion calls into question the correctness of that order, we construe the plaintiffs' motion as being filed under Rule 59(e).  See Finch v. City of Vernon, 845 F.2d 256, 258 (11th Cir. 1988) (explaining that if a post-judgment motion is filed within the period provided for in Rule 59(e) "and calls into question the correctness of that judgment it should be treated as a motion under Rule 59(e)" (internal quotation marks omitted)); see also Fed. R. Civ. P. 59(e).[6]

There are only two grounds for granting a Rule 59(e) motion for reconsideration: (1) "newly-discovered evidence"; or (2) correcting "manifest errors of law or fact."  Arthur v. King, 500 F.3d 1335, 1343 (11th Cir. 2007) (internal quotation marks omitted).  A district court should only grant a motion for reconsideration on the basis of newly discovered evidence when the evidence is "such that a new trial or reconsideration of the final judgment or order would probably produce a new result."  In re Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc., 685 F.3d 987, 1001 (11th Cir. 2012) (internal quotation marks and alterations omitted).

The district court concluded that consideration of the plaintiffs' new evidence would not have led to a different result.  We cannot say that the district court abused its discretion when it did so.  Nothing in the materials attached to the Rule 59(e)

---

[6]We review for abuse of discretion a district court's denial of a Rule 59(e) motion for reconsideration.  See Sanderlin v. Seminole Tribe of Fla., 243 F.3d 1282, 1285 (11th Cir. 2001).  At the time of Finch, Rule 59(e) required filing within 10 days.  The rule has since been amended to allow for motions filed within 28 days.

13

motion identified similarly situated comparators who received backpay or otherwise would have aided the plaintiffs in establishing their prima facie case of discrimination.

In light of the foregoing, we find no error in the district court's dismissal of the plaintiffs' amended complaint for failure to state a claim, or in its denial of the plaintiffs' motion for reconsideration.  Thus, we affirm.

**AFFIRMED.**